KLEES, Judge.
Plaintiff Schexnayder appeals a decision of the Civil Service Commission upholding his suspension and subsequent dismissal from the New Orleans Police Department for allegedly cashing another police officer’s payroll check by means of a forged endorsement. We affirm.
On March 11, 1983, at 11:11 a.m., teller Linda Harris cashed a police payroll check made out to Patrick Jones in the amount of $598.11 at the Hibernia bank branch located at 4300 Magazine Street, directly across from the Second District police station. The teller did not request any identification from the person who presented the check because she thought he looked familiar. It was later determined that the check had been stolen and contained a forged endorsement.
A criminal investigation was begun and Miss Harris was initially questioned about the incident on March 31st, at which time she said she did not recall cashing the check. Several days later, however, she contacted the investigators and told them that after talking with other tellers, she had refreshed her memory and was able to give them a physical description of the man who had presented the check.
On April 22, Miss Harris saw the plaintiff standing in her line at the bank and immediately recognized him as the individual who had previously presented the forged check. When he reached the front of the line, he presented to her a check made out *463 to someone with the first name of “Donald”, and a last name she didn’t recall. She asked the plaintiff for identification, at which point he stated he had given her his partner’s check by mistake. Plaintiff then retrieved the first check and presented his own payroll check with his identification. Miss Harris cashed the check, and, as plaintiff left the bank, she utilized a device at her desk to activate the bank’s hidden camera, which snapped several photographs of plaintiff. Miss Harris then contacted the bank’s chief security officer, who notified the police of the incident. Later that day, Miss Harris identified the plaintiff in a photo lineup, and he was arrested and charged with the crime of forgery, a violation of LSA-R.S. 14:72. Plaintiff was issued an indefinite suspension by the New Orleans Police Department and was terminated on June 28, 1983.
Plaintiff appealed his termination to the Civil Service Commission, and, after reviewing testimony given before its hearing examiner, the Commission confirmed the action of the police department. In November of 1983, the State dropped all criminal charges against plaintiff. Plaintiff subsequently applied to the Commission for a rehearing, which was granted. Following the rehearing, the Commission affirmed its original ruling, and plaintiff then appealed that decision to this court.
The appropriate standard of review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission is arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless the appointing authority (Superintendent of Police) has demonstrated by a preponderance of the evidence that the conduct of the employee in question was such that it impaired the efficiency and orderly operation of the public service. Id. In this case, the police department had the burden to establish that plaintiff did in fact present for cashing another officer’s check bearing a forged endorsement, which unlawful conduct would clearly impede the efficient operation of the police department. We find that the department has met this burden of proof.
Plaintiff was charged by the department with the violation of Rule 2, Paragraph 1, of the Rules of the Civil Service Commission, which reads as follows:
RULE 2. MORAL CONDUCT
1. ADHERENCE TO LAW
A member shall act in accordance with the constitutions, statutes, ordinances, administrative regulations, and the official interpretations thereof, of the United States, the State of Louisiana, and the City of New Orleans, but when in another jurisdiction shall obey the applicable laws. Neither ignorance of law, its interpretations, nor failure to be physically arrested and charged,» shall be regarded as a valid defense against the requirements of this rule.
At the original hearing, the department’s case was based primarily upon the identification of plaintiff by teller Linda Harris. Plaintiff attempted to establish an alibi by calling Sergeant Chester Cooke, who testified that he spoke with plaintiff at the Second District police station at about 10:55 or 11:00 a.m. and that he saw plaintiff leave the station at 11:30 a.m. Nevertheless, this testimony did not conclusively establish that plaintiff was not across the street at the Hibernia bank at 11:11 a.m.
On rehearing, the plaintiff sought to introduce the testimony of Clifford Strider, employed by the district attorney’s office, as to why he had entered a nolle prosequi before trial of the criminal case against plaintiff. The hearing examiner excluded this testimony as hearsay, but allowed it to come in on a proffer. Mr. Strider stated that the case was dropped because the prosecutors feared that the testimony of another teller, Loretta Bennett, might inject a reasonable doubt into the case, and also because of a pretrial ruling from this court holding that evidence of a subsequent incident which the State had planned to use was inadmissible. *464 On appeal, plaintiff claims that the Commission improperly excluded the testimony of Mr. Strider. We find, however, that whether the evidence actually constituted hearsay is irrelevant to our decision. Because the burden of proof in a criminal case is much greater than in a civil one, the fact that the district attorney’s office felt it could not successfully prosecute the plaintiff does not directly bear upon the Civil Service Commission’s decision regarding the propriety of the police department’s action. Furthermore, the only element of the proffer which might tend to exculpate plaintiff — the testimony of Loretta Bennett — was brought out directly when Miss Bennett testified at the rehearing.
The essence of Miss Bennett’s testimony was that about two weeks after the March 11th incident, Linda Harris pointed out a white man standing in Miss Bennett’s line as the man she thought had cashed the check, at which point Miss Bennett reminded Miss Harris that the individual she had originally described was black. Linda Harris emphatically denied Miss Bennett’s story when she took the stand at the rehearing, stating that she had questioned Miss Bennett about a white police officer standing in her line, but only in an effort to determine who the bank’s regular police customers were. She denied having told Miss Bennett that the white officer was the one who had cashed the forged check. Moreover, Miss Harris reconfirmed her pri- or testimony that she was absolutely positive that plaintiff Schexnayder was the one who had presented the check.
On the whole, we find Linda Harris’ testimony to be more convincing than that of Miss Bennett. At the original hearing, Peter Baldassaro, the chief security officer at the bank, stated that during the initial period after Miss Harris was told of the forgery, she was very nervous about losing her job because she felt she had violated a security policy by cashing the check without requesting identification. It was only after Mr. Baldassaro assured her that she had not committed a security violation that Miss Harris calmed down enough to remember the incident clearly. At that point she stated that she recalled the plaintiff especially because she had thought him to be attractive and had struck up a conversation with him. She then immediately recognized him on April 22nd when he reappeared in her line and was confident enough to take photographs of him.
In view of this testimony, we cannot say that the Civil Service Commission acted arbitrarily or capriciously in upholding the dismissal of officer Schexnayder. To the contrary, we find that the preponderance of the evidence supports the conclusion that plaintiff Schexnayder did present a forged check to teller Harris on March 11, 1983. Accordingly, we affirm the decision of the Civil Service Commission. All costs to be borne by appellant.
AFFIRMED.