723 So.2d 1031 (1998)
Edgar STAEHLE
v.
DEPARTMENT OF POLICE.
No. 98-CA-0216.
Court of Appeal of Louisiana, Fourth Circuit.
November 18, 1998.
*1032 Frank G. DeSalvo, Frank G. DeSalvo, P.L.C., New Orleans, for Plaintiff/Appellant.
Albert A. Thibodeaux, Assistant City Attorney, Annabelle H. Walker, Deputy City Attorney, Franz L. Zibilich, Chief Deputy City Attorney, Avis Marie Russell, City Attorney, New Orleans, for Defendant/Appellee.
Before BARRY, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
AFFIRMED
New Orleans Police Officer Edgar Staehle appeals a decision of the New Orleans City Civil Service Commission ("CSC") upholding a seven-day suspension imposed by the New Orleans Police Department ("NOPD"). Because the record evidence provides a rational basis for the CSC decision, we affirm.

Facts
The record indicates that at approximately 12:30 a.m. on September 9, 1996, Officer Staehle, who was off-duty, became involved in an altercation with two males while intervening in a situation involving a woman, apparently in his capacity as a police officer. Officer Staehle admitted that he had drunk 10 beers in approximately seven hours prior to the incident. Moreover, at the time of the incident, Officer Staehle admitted that he was holding an open beer bottle. Pictures taken at an automatic teller machine ("ATM") prior to the incident also show him holding the beer bottle.
As a result of the incident, Officer Staehle was charged with violation of the following NOPD rules:
Rule 3: PROFESSIONAL CONDUCT
PROFESSIONALISM
Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the Police Department.
Rule 2: MORAL CONDUCT
ADHERANCE TO LAW
Employees shall act in accordance with the constitutions, statutes, ordinances, administrative regulations, and the official interpretations thereof, of the United States, the State of Louisiana, and the City of New Orleans, but when in another jurisdiction shall obey the applicable laws. Neither ignorance of the law, its interpretations, nor failure to be physically arrested and charged, shall be regarded as a valid defense against the requirements of this rule.
The applicable law Office Staehle was charged with violating was New Orleans Municipal Code §54-404, relative to "Carrying of Opened ContainersProhibited," which provides as follows:
It shall be unlawful for any person to carry or drink from an opened glass or opened metal container in or any public street or sidewalk in the city.
Officer Staehle testified at the hearing before the CSC that he was aware of the fact that walking around with an open container was "against the law."
An internal investigation was performed. As a result, Officer Staehle was suspended for five days for violation of the Professionalism rule, and for two days for violation of the Adherence to Law rulea total of seven days. Officer Staehle alleges that the seven-day suspension is excessive.

Standard for review
This court recently summarized the law applicable to the instant case as follows:
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action except for cause expressed in writing. La. Const. art. X, § 8(A). An employee may appeal disciplinary action taken against him to the CSC. Id.; La.Rev.Stat. Ann. § 33:2424. On appeal, the CSC has a duty to decide if the appointing authority has good or lawful cause for taking the disciplinary *1033 action and, if so, whether the punishment imposed is commensurate with the offense. Walters v. Department of Police, 454 So.2d 106 (La.1984); Lentz v. Department of Police, 94-0814, p. 1 (La.App. 4th Cir.11/30/94), 646 So.2d 518, 519, writ denied, 94-3135 (La.3/10/95), 650 So.2d 1177. The appointing authority has the burden of proving by a preponderance of the evidence not only that the complained-of conduct occurred, but that it impaired the efficient operation of the governmental entity. Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993). In reviewing the decision in a civil service case, an appellate court "should not modify the [CSC's] order unless it is arbitrary, capricious, or characterized by abuse of discretion. `Arbitrary or capricious' means the absence of a rational basis for the action taken." Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citations omitted).
Southall v. Sewerage & Water Board, 97-2214 at *2 (La.App. 4 Cir. 3/18/98), 714 So.2d 727, 1998 WL 130034.
The above quotation indicates that a reviewing court must determine two factors: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment imposed is commensurate with the offense. The quotation then establishes a two-pronged burden which the department must meet in order to prove that it had good and lawful cause for the disciplinary action taken: (1) proof that the complained-of conduct occurred, and (2) proof that the conduct impaired the efficiency of the department. On appeal, Officer Staehle does not contest the finding that the complained-of conduct occurred. Thus, the first question to be answered is whether the CSC had a rational basis for its decision that the department met its burden of proving that Officer Staehle's conduct impaired the efficiency of the NOPD. If that decision has a rational basis, then the court may consider the second factori.e., whether the punishment imposed is commensurate with the offense.

Rational basis for discipline
In an effort to carry its burden of proving that Officer Staehle's conduct impaired the efficiency of the department, the NOPD offered the testimony of NOPD Superintendent Richard Pennington, who stated, in pertinent part, as follows:
Q. And could you tell the Commission why youwhat type of penalty you issued and why you issued that particular penalty.
A. I think I gave Officer Staehle a total of seven days, five days for professionalism and two days for adherence to law. So it was a total of seven days, and the reason was because of the seriousness of the infraction based on the fact that the officer was off duty and after doing the report, he had been drinking and, to his own admittance, he had consumed approximately 10 beers, and then in addition to that, he had an open container, a bottle of beer, he got involved in a tried to assist an unknown female and the assistance ended up in an altercation with two other young males and as a result, based on the fact that because of him taking or allegedly trying to take police action while consuming alcoholic beverages, I thought it was a very serious infraction.
MR. DWYER:
Wasdid he tell you these things?
MR. PENNINGTON:
Well, it was based on his report, his statement to the investigator.
MR. DWYER:
His statement?
MR. PENNINGTON:
Yes, sir.
BY MR. THIBODEAUX:
Q: Okay. Chief Pennington, could you tell the Commission how the type of conduct engaged in by Police officer Staehle affects the overall operation and efficiency and effectiveness of the department?
A. Well, I think, first of all, theI'm trying to send a message to the police department that what you do off duty impacts the department in general. Recently, I had some other supervisors *1034 that were involved in an event off duty at a bar and I came down realvery stern on a captain and a sergeant and another patrol officer for drinking off duty and being involved in serious infractions of departmental rules off duty. So I've been very consistent in the discipline process as it relates to faring [sic] out discipline to officers that are involved in things off duty.
It's very embarrassing to the organization. A police officer should be a police officer 24 hours a day, because we're on call, subject to call-back at any time, and we don't want our officers out, embarrassing the department or bringing discredit or either demeanor or actions against our organization. So I'm going to continue to be very, veryas it relates to discipline, giving out discipline to officers that are involved in serious infractions off duty.
Record, vol. II, pps. 5-8. Further, Superintendent Pennington testified on cross-examination that off-duty police officers are not prohibited from drinking, so long as they "don't bring embarrassment to the organization." Superintendent Pennington's testimony is sufficient to carry the NOPD's burden of proving that Officer Staehle's conduct impaired the efficiency of the department.

Commensurate nature of punishment
The second factor which must be reviewed in order for an appellate court to determine whether an appointing authority properly imposed disciplinary action against a classified employee is whether the punishment is commensurate with the offense. Officer Staehle's appeal focuses on this factor; he claims that no evidence was presented indicating that Officer Staehle was intoxicated or that the altercation was caused by his consumption of alcohol. However, neither of those alleged facts relate to the excessiveness of the suspension. Moreover, as explained more fully below, the record evidence proves that the length of the suspension has a rational basis and therefore is not arbitrary or capricious.
Rule IX, §1, para. 1.1 of the Rules of the Civil Service Commission for the City of New Orleans, provides, in pertinent part, as follows:
When an employee in the classified service... has committed an act to the prejudice of the service, ... or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
...
(5) suspension without pay not exceeding one hundred twenty (120) calendar days.
Superintendent Pennington's April 24, 1997 letter to Officer Stahle, informing him of the department's disciplinary decision, states that the seven-day suspension was chosen "in light of the ... investigation, and due to the serious nature of your violation." Moreover, Superintendent Pennington testified that the department uses a "disciplinary chart" to determine punishment for officers subject to disciplinary action. The chart is designed to allow the department to consider a number of factors, including the officer's disciplinary history, when determining the appropriate discipline to impose. Thus, the record evidence is sufficient to establish a rational basis for the punishment imposed on Officer Staehle.

Conclusion
Because the record establishes a rational basis for the CSC's findings both that the NOPD had good or lawful cause for taking the disciplinary action, and that the punishment imposed was commensurate with the offense, the CSC's decision upholding Officer Staehle's seven-day suspension is affirmed.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, J., dissenting with reasons.
At the hearing before the Civil Service Commission, Sergeant Bernell Nevil Jr. testified that he investigated the incident. Nevil testified that Staehle said he consumed ten beers while off duty. Nevil said a camera at an ATM machine took a picture of Staehle *1035 holding an open beer bottle. The picture is not in evidence. During the evening Staehle saw a female "in distress" and went to her aid. Superintendent Richard Pennington testified that in the process Staehle got into an altercation with two males. That testimony was based on a report Superintendent Pennington reviewed. Sgt. Nevil testified that Staehle was in possession of an open beer bottle during the altercation.
Staehle acknowledged that he consumed ten beers in about seven hours while off duty, but was not intoxicated. He said that he found a beer bottle on the street, picked it up to discard, and stopped at the ATM while holding the bottle.
Captain Linda Buczek testified that after a disciplinary hearing she recommended not to sustain the charges of violating professionalism and carrying an open container. She said that Chief of Operations Ronald Serpas agreed that no violation occurred and he approved that no charge was warranted. Lieutenant Jeffrey Winn, who assisted at the hearing, corroborated Capt. Buczek's testimony.
Superintendent Pennington testified that the infraction was serious because Staehle consumed ten beers, held an open container, attempted to take police action and got into an altercation. Superintendent Pennington testified that the incident was embarrassing, discredited the Department, and he overruled Capt. Buczek and Chief Serpas.
Staehle argues that a seven day suspension was excessive because there was no showing of a real and substantial relationship between the alleged violations and the efficient operation of the Department. That argument has merit.
In a civil service disciplinary case this Court has a multifaceted review function. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647; Montegue v. New Orleans Fire Dept., 95-2166, p. 5 (La.App. 4 Cir. 5/29/96), 675 So.2d 810, 813, writ den. 96-1707 (La.10/4/96), 679 So.2d 1389. We are to apply the clearly wrong or manifest error rule to the Commission's factual findings. Bannister, 666 So.2d at 647. In evaluating the Commission's determination as to whether the disciplinary action is based on legal cause and commensurate with the infraction, this Court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. Bannister, 666 So.2d at 647; Montegue, 675 So.2d at 813. "Arbitrary or capricious" means the absence of a rational basis for the action taken. Bannister, 666 So.2d at 647.
It was Staehle's candid admission that he drank ten beers over seven hours, which is the basis for his suspension; however, he said he was not intoxicated and the beer bottle in the ATM photo was litter which he intended to discard. There is no evidence that Staehle was intoxicated.
Superintendent Pennington testified that it is not against Department rules for an officer to drink in moderation while off-duty. He said the officer must not "put himself in a precarious position where he still cannot function as a police officer if he has to, off duty."
There was no evidence that Staehle was in uniform. There was no evidence of his blood alcohol level, no evidence that he was intoxicated or that the altercation resulted from his drinking beer. There is no proof that alcohol hindered his ability to function as a police officer. Officer Staehle did what he was supposed to do, i.e., intervene in the altercation to protect the female. There is no evidence that beer impaired his decision or caused a problem.
After a full hearing Capt. Buczek recommended all charges be refused. Chief Serpas agreed. The record does not show that Staehle's activities had a significant (or any) negative impact on the efficient operation of the department.
A seven-day suspension is not commensurate with the alleged infractions and was an abuse of discretion. I would order that the suspension be stricken from Staehle's jacket and seven days back pay be reinstated.