h MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
New Orleans Fire Department (NOFD) Firefighter Reginald Jones appeals from the judgment of the Civil Service Commission, City of New Orleans, dismissing the appeal of his emergency suspension (# 5725) and termination (# 5760) by the NOFD. Having found no error in the Commission’s judgment, we affirm.
STATEMENT OF FACTS
Appellant identified and admitted having received a letter dated 8 October 1997 from Superintendent of Fire Warren E. McDaniels, charging appellant with violation of Sections 5.2.27 and 5.4.2 of the Rules and Regulations of the NOFD, and with violation of C.A.O. Policy # 389 relative to being intoxicated while on duty. According to the letter, the NOFD Rules provided:
Section 5.2.27 — Members shall be governed by the customary and reasonable rules of proper behavior and shall not commit any act that brings reproach upon themselves or the Department.
| ^Section 5.4.2 — No member while on duty or while in uniform off duty shall consume, possess or be under the influence of any alcoholic beverages.
The letter charged that appellant was involved in a hit and run accident on 6 July 1997, was arrested by the New Orleans Police Department at his duty station, and was under the influence of alcohol. Appellant was placed on interim suspension, effective at midnight on 6 July 1997, and was ordered to appear before the Departmental Peer Review Board to present evidence and testimony regarding the charges on 16 October 1997 at 2:00 p.m. The letter advised appellant that the charges, or his failure to appear before the Board, could result in his termination.
Appellant testified that on 6 July 1997, he went to work at 7:00 a.m. At 4:00 p.m., he was relieved until 10:00 p.m. by Joel Holmes, under a mutual agreement whereby appellant would be paid for the hours between 4:00 p.m. and 10:00 p.m., and would pay Holmes for having worked those hours in appellant’s place. Appellant testified that he left the fire station at between 4:30 and 4:45 p.m., went home to change out of his uniform into shorts and a green shirt and arrived at a family party uptown at about 6:00 p.m. At about 9:10 p.m., he consumed two sixteen ounce Budweiser beers and within twenty to thirty minutes of having drunk the beers, while driving home, was involved in a hit and run accident. He also admitted that he was arrested by NOPD officers at his place of employment, NOFD Engine 24 on St. Claude Avenue and Poland Avenue.
Appellant identified and admitted having received a termination letter from the Superintendent dated 24 October 1997. Appellant confirmed that he had participated in a hearing at which the charges were presented and at which he told the panel that he had been involved in a tragic accident while out of uniform when a neighbor stepped in front of his car in an unlit area. The neighbor was carrying a | asix-pack of beer and swinging it back and forth when the beer was struck by appellant’s truck, causing beer to spray over the truck’s windshield. Appellant testified that after *869 his windshield was cleared of the beer, he saw no one in front of or in back of the truck. Fearing that the pedestrian had hit the truck with the beer cans in an effort to rob him or carjack his truck, the appellant did not stop, and went home. He changed out of his shorts, because he had been bitten by mosquitoes, put on a pair of long, blue khaki pants described as similar to NOFD uniform pants and returned to the engine house to relieve Holmes. When he arrived, he noticed extensive damage to his truck, more than would have been caused merely by a six-pack of beer. He called Emergency Medical Services on the radio and heard that a man had been hit on Elysian Fields Avenue. He immediately told his Captain what had happened and expressed a need to call the police to find out if he should return to the scene.
Appellant testified that his blood alcohol level at the time was 1.25 and the victim’s was 2.2, with evidence of cocaine and crystal methamphetamine.
Appellant testified that he was arrested on 7 July 1997 and charged with vehicular homicide and hit and run. He pled guilty to the reduced charge of negligent homicide, and the district attorney dropped the hit and run and vehicular homicide charges. He testified to his belief that, following a pre-sentence investigation, he would receive a five year probationary sentence.
Superintendent McDaniels identified the interim suspension letter and the termination letter. He testified that he relied on the results of the alcohol screen administered by NOPD investigators in concluding that appellant had violated NOFD policy. He reviewed the findings of the peer review committee. In finding appellant guilty of a violation of Section 5.2.27, Superintendent McDaniels relied |4on testimony and evidence that appellant was involved in a hit and run accident that resulted in the death of a citizen. The NOFD regards that as a very serious matter, and being charged with maintaining the trust of the public, acts on those kinds of incidents “quite early on.” Had it been proven that appellant was not guilty, whatever suspensions or loss of pay or benefits he suffered could have been restored to him.
Superintendent McDaniels testified that the hit and run shows a lack of judgment in that appellant did not stop to aid or to at least find out what exactly had happened. He felt it would be customary and reasonable to stop and learn the impact of the accident. NOFD has an obligation to maintain public confidence and the confidence of co-workers inconsistent with appellant’s having fled the scene of an accident.
Superintendent McDaniels testified that with respect to the violation of Section 5.4.2, he relied on the fact that appellant was taken from the firehouse to have his blood alcohol level tested and that the test found the level to be over the legal limit. Appellant knew that it was his responsibility to return to the engine house to relieve Holmes, and showed poor judgment in drinking before returning to work. Appellant also demonstrated poor judgment in drinking during a period of absence from his job, knowing that he would have to return to work at 10:00 p.m. to relieve Holmes. NOFD has a policy in place that if a person is impaired or otherwise is not going to report to work, he is to advise NOFD at certain times that he is ill or has an emergency and will not report for work, in which case NOFD would hire an overtime worker. Appellant did not so advise NOFD.
The Superintendent testified that appellant was expected to return to duty when he returned to the firehouse at 10 p.m. He contradicted appellant’s |scontention that *870 he was merely going to “pull up” to relieve Holmes, but would not go on duty himself. Superintendent McDaniels pointed out that “pulling up” is a euphemism for being ill or injured, and appellant could not simply decide not to report to work. The NOFD has a responsibility for a staffing level of members that have to be on duty in order to have the required number of units in service. Appellant had a responsibility to be at work unless ill or injured. Appellant could not automatically take annual leave, for which application would have to be made.
Superintendent McDaniels testified that as a firefighter, appellant had the responsibility to respond to emergencies and to make decisions and judgments that might affect victims, his co-workers and himself. Incidents such as this impair public confidence in the ability of the NOFD to respond properly to various types of emergencies. Judgment is essential in everything the NOFD does, and NOFD must maintain a state of readiness without impairment. Since NOFD representatives often must enter homes, public confidence in the NOFD is important. The citizens must be confident that NOFD will respond rapidly, with the expertise and equipment to take care of the emergency, and they must be confident of the character of the people who are responding. Those whose employment obligations place them in citizens’ homes to provide this service should be above reproach.
The Superintendent also testified concerning the negative impact this type of behavior had on morale of appellant’s coworkers, who work together closely on 24-hour shifts and who depend on each other’s sobriety and judgment in emergency situations.
Superintendent McDaniels described the NOFD and police investigation processes, and their impact on the NOFD. The unit captain, district chief and Ldeputy chief had to come down to begin the investigation. Because of the ongoing police and NOFD investigations, appellant’s unit had to be taken out of service and was unable to respond to any emergency. There was also a serious emotional toll taken on the individuals at that firehouse, based on their testimony and informal interviews.
The NOFD was also affected adversely by media accounts of the incident, in each of which appellant was identified as a New Orleans firefighter.
Appellant denied any intent to violate Rule 5.2.27.
STANDARD OF REVIEW AND BURDEN OF PROOF
In reviewing the Commission’s findings of fact, the court should not reverse or modify a finding unless it is clearly wrong or manifestly erroneous. Bannister v. Department of Streets, 95-0404 p. 8 (La.1/16/96), 666 So.2d 641, 647; Staehle v. Department of Police, 98-0216 p. 3 (La. App. 4 Cir. 11/18/98), 723 So.2d 1031, 1033.
A reviewing court must decide whether the appointing authority had good or lawful cause for taking the disciplinary action and whether the punishment imposed is commensurate with the offense. Staehle at p. 3, 723 So.2d at 1033. In determining whether the Commission’s exercise of its discretion in determining whether disciplinary action is based on legal cause, and the punishment is commensurate with the infraction, the reviewing court may not modify the Commission’s order unless it is shown to be arbitrary, capricious or characterized by an abuse of discretion. Bannister, at p. 8, 666 So.2d at 647.
|7In order to prove that it had good and lawful cause for the disciplinary action *871 taken, the appointing authority, in this case, the NOFD, has the burden of showing (1) that the complained-of conduct occurred, and (2) that the conduct impaired the efficiency of the department. If the decision has a rational basis, then the court may consider whether the punishment imposed is commensurate with the offense. Staehle, at p. 3, 723 So.2d at 1033.
FIRST ASSIGNMENT OF ERROR[1]: The City failed to show that Appellant’s off-duty conduct adversely impacted the efficient operation of the NOFD.
Employees with permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const, art. X, § 8(A). “Cause” for dismissal of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Bannister, at p. 8, 666 So.2d at 647. The reviewing court is to examine the record to determine whether there is a rational basis for the Commission’s decision. See, Bannister, at p. 9, 66 So.2d at 648.
There is uncontradicted evidence in the record that appellant pled guilty to the felony, negligent homicide, arising out of his having struck and killed a pedestrian while operating a vehicle and while his blood alcohol level was 0.125, well in excess of the legal standard for impairment. It is likewise established | swithout contradiction that he reported back to duty at his fire station while so impaired.
The testimony of Superintendent McDaniels clearly establishes sufficient proof of damage to NOFD morale as well as to the NOFD’s reputation in the community arising from appellant’s conduct to satisfy the manifest error standard of review.
There is no doubt, taking the record as a whole, that the complained-of conduct occurred. Appellant admits his impairment at the time of the accident and at the time he reported to his station to relieve Holmes. Although he was not in full uniform at the time he reported for duty, Section 5.4.2 clearly prohibits consumption or possession of alcoholic beverages as well as impairment while on duty OR while in uniform off duty. Since he returned to duty upon relieving Holmes at 10:00 p.m., whether he was in or out of uniform is irrelevant to a finding that he violated Section 5.4.2. There is competent evidence that the dissemination of the information concerning his impairment and the resulting hit and run accident both adversely affected internal morale among his co-workers, and served to diminish the regal'd and respect in which members of the NOFD are held in the wider community. This bringing of reproach on the department and diminution of community trust and respect were shown by the un-contradicted testimony of Superintendent McDaniels to have created difficulties for the firefighters in the performance of their duties in the community.
19This evidence provides a rational basis for the Commission’s conclusion that the complained-of conduct occurred and that it impaired the NOFD’s efficiency and brought reproach on appellant and the NOFD.
*872 This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: The discipline imposed on Appellant was excessive.
The evidence clearly shows that appellant pled guilty to a felony and was impaired at the time he reported to work. Furthermore, the notoriety attendant on the death of his hit-and-run victim damaged internal morale and community regard for the NOFD.
Considering the seriousness of this matter, we find no abuse of the Commission’s discretion in approving of the NOFD’s action terminating appellant’s employment. This Court affirmed termination of a policeman who was charged with forgery. Schexnayder v. New Orleans Police Dept., 474 So.2d 461 (La.App. 4 Cir.1985). We also affirmed termination of a policeman who refused to submit to an Intoximeter test, was abusive to federal employees who were present and cursed deputies of the Criminal Sheriffs Office who came to assist him in Gerhold v. New Orleans Police Dept., 503 So.2d 206 (La.App. 4 Cir.), writ denied, 505 So.2d 1141 (La.1987). Similarly, we affirmed dismissal of a policeman charged with possession of stolen property. Knight v. New Orleans Police Dept., 302 So.2d 396 (La.App. 4 Cir.1974).
| inIn light of the evidence of serious misconduct and damage to the NOFD, which far exceeded the violations of the terminated officers in the cited cases, we cannot say that the NOFD abused its discretion in terminating appellant, nor does the record support a finding that the Commission abused its discretion in affirming the discharge.
This assignment of error is without merit.
CONCLUSION AND DECREE
For the foregoing reasons, we affirm the ruling of the City of New Orleans, Civil Service Commission. Costs of this appeal are assessed against the appellant.
AFFIRMED.

. Appellant’s brief contains no assignment of error. We shall consider the argument and authorities submitted by appellant in support of “Issues Presented” to be his assignments of error.