RHETT CHARLES      *      NO. 2019-CA-0232

VERSUS      *

     COURT OF APPEAL

NEW ORLEANS POLICE      *
DEPARTMENT      FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 8736
Hearing Officer Jay Ginsberg
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Roland L. Belsome,
Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

Kevin Vincent Boshea
2955 Ridgelake Drive, Suite 207
Metairie, LA 70002
     COUNSEL FOR PLAINTIFF/APPELLANT


Elizabeth Robins
DEPUTY CITY ATTORNEY
Renee Goudeau
ASSISTANT CITY ATTORNEY
Donesia D. Turner
CHIEF DEPUTY CITY ATTORNEY
Sunni J. LeBeouf
CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, LA 70112
     COUNSEL FOR DEFENDANT/APPELLEE

     **AFFIRMED**
     **SEPTEMBER 16, 2020**

*RBW*

*RLB*

*PAB*

Appellant, a sergeant with the New Orleans Police Department, seeks review of the Civil Service Commission's October 5, 2018 ruling that upheld his two (2) day suspension for violating New Orleans Police Department Rule 4: Performance of Duty, Paragraph 4(B) Supervisory Responsibility for failure to properly investigate a complaint of misconduct against an officer with the New Orleans Police Department. For the reasons that follow, we affirm the Civil Service Commission's ruling upholding the New Orleans Police Department's two (2) day suspension of Appellant.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

At the time of the underlying events that gave rise to the discipline imposed, Appellant, Sergeant Rhett Charles ("Appellant"), had been employed by the New Orleans Police Department ("NOPD") for twenty-eight (28) years and was a

1

permanent, classified employee. The discipline imposed on Appellant stems from his investigation of a complaint of misconduct against NOPD Officer Taralyn Webster ("Officer Webster").

On March 27, 2015, Officer Webster investigated a traffic accident that occurred at the intersection of Napoleon and South Claiborne Avenues in New Orleans, Louisiana.[1] Upon arriving at the scene of the traffic accident, Officer Webster activated her body-worn camera and interviewed the drivers involved in the traffic accident. Officer Webster did not make an immediate assessment of fault for the traffic accident. While at the scene and engaged in conversation with a driver involved in an earlier accident, Officer Webster deactivated her body-worn camera. After the accident, Officer Webster met with a member of the City Attorney's Traffic Court Division, but did not supplement her report. In her report, Officer Webster erroneously stated that the vehicle's airbags deployed as a result of the traffic accident and misstated the date the traffic accident occurred.

Appellant reviewed the audio and visual footage captured by Officer Webster's body-worn camera and interviewed Officer Webster. Appellant concluded that the conversation regarding the relevant traffic accident had concluded at the time when Officer Webster deactivated her body-worn camera. Further, Appellant asserted that the policy regarding the body-worn camera was not in effect until after the traffic accident at issue.[2] Appellant was aware that

---

[1] According to Appellant, Officer Webster was assigned to investigate two (2) separate accidents that occurred at the same intersection.

[2] Policy 41.3.10 entitled, "Body-Worn Camera ("BWC")" was revised 04/05/2015; it replaced policy 447, entitled, "Body-Worn Camera ("BWC")", which had been adopted on 03/11/2014

Officer Webster had contacted the City Attorney Traffic Division, but this information was omitted from the report. At the time of the traffic accident, Officer Webster had recently returned to work from injury or sick leave. Prior to Officer Webster's leave, the crash reports were generated on paper, not computer; in the report at issue, she inadvertently struck an erroneous key when indicating whether the vehicle's airbags deployed. Appellant believed that Officer Webster's error deserved counseling and training rather than a sustained DI-1 violation.[3] Appellant found Officer Webster's alleged violation of deactivating her body-worn camera not sustained and found Officer Webster's alleged violation of not making an immediate determination of fault unfounded.

On May 11, 2015,[4] an administrative hearing was held before NOPD Captain (Ret.) Frederick Morton of the Alternative Response Unit. At the conclusion of the hearing, Capt. Morton recommended that the charge against Appellant be sustained, but that Appellant receive the discipline of a Letter of Reprimand.

---

and was in effect during the pertinent time period of the instant matter. For purposes of this matter, the language contained in the subsection of the policy entitled, "Cessation of Recording" under both Policy 41.3.10 and Policy 447 are identical and state the following, in pertinent part, "Once the BWC system is activated it shall remain on and shall not be turned off until an investigative or enforcement contact or incident has concluded. For purposes of this section, conclusion of an incident has occurred when an officer has terminated contact with an individual, cleared the scene of a reported incident, or has completed transport of a civilian or an arrestee. In any instance in which cessation of the recording prior to the conclusion of an incident may be permitted, the officer must seek and obtain supervisory approval prior to deactivating the BWC."

[3] Appellant testified that "if there's an oversight or something that just needs to be corrected we [] normally give it back to the officer and have him correct it. . . . And in [] this incident the wrongs were just an oversight that didn't get put into the proper places."

[4] The record indicates May 11, 2016, which is clearly erroneous and the proper date should be May 11, 2015.

On May 13, 2015, Captain Ernest Demma ("Capt. Demma") of NOPD's Field Operations Bureau issued an internal memorandum to the Superintendent of Police, in which he stated that he disagreed with Capt. Morton's suggested penalty and recommended a two (2) day suspension. The (then) Superintendent of Police, Michael Harrison agreed with Capt. Demma's recommended discipline.

On October 26, 2015, NOPD Deputy Superintendent Paul Noel[5] ("Deputy Superintendent Noel") reviewed Appellant's investigation of Officer Webster and found that Appellant's recommendations were inconsistent with NOPD policies, particularly the policy regarding body-worn cameras, as well as the policy regarding the failure to assess fault and issue a traffic citation. Deputy Superintendent Noel reviewed the footage recorded by Officer Webster's body-worn camera, and concluded that her body-worn camera was deactivated while she was still speaking with a driver about an accident. For this reason, he concluded that the corresponding violation should have been sustained. Deputy Superintendent Noel recognized various mistakes in Appellant's report – for example, although Officer Webster did consult with the City Attorney regarding the March 27, 2015 traffic accident, Appellant neglected to note that in his investigation report; Appellant contended that this was merely an oversight. Deputy Superintendent Noel concluded that Appellant's investigation and recommendations were negligent. As a result, on November 9, 2015, Deputy Superintendent Noel initiated a Public Integrity Bureau ("PIB") investigation

---

[5] At the time of this investigation, Deputy Superintendent Noel was the Commander for the NOPD Second District where Appellant was assigned.

against Appellant. During the course of his twenty-one (21) years' tenure with the NOPD, this was the first time Deputy Superintendent Noel initiated a PIB investigation against an investigator in such an instance.

On November 23, 2015, Lieutenant Jenerio Sanders ("Lt. Sanders") who is employed by the NOPD as a PIB Investigator within NOPD's Second District conducted the administrative investigation against Appellant. On December 18, 2015, Lt. Sanders sustained a violation of Rule 4: Performance of Duty; Paragraph 4(b); Neglect of Duty, Supervisory Responsibility against Appellant. This was Appellant's first violation. Lt. Sanders concluded that Appellant failed to address Officer Webster's consultation with the City Attorney Traffic Division, dismissed mistakes in Officer Webster's traffic accident report as unfounded, and failed to find that Officer Webster violated the policy regarding the deactivation of body-worn camera.

On November 2, 2017, the (then) Superintendent of Police Michael Harrison issued a letter to Appellant outlining his two (2) day suspension, effective the week of November 5, 2017, and his right to appeal the decision to the Civil Service Commission ("CSC").

Appellant timely appealed his suspension. On October 5, 2018, the CSC affirmed the two (2) day suspension. It is from this affirmation that Appellant has filed the appeal with this court.

## DISCUSSION

### *Assignments of Error*

On Appeal, Appellant raises two (2) assignments of error:

1.  Whether the CSC erred in upholding the NOPD's two (2) day suspension

    of Appellant; and

2.  Whether the NOPD met its burden of proof.

In summary, Appellant's assignments of error address whether the CSC abused its

discretion and acted arbitrarily and capriciously by upholding the NOPD's two (2)

day suspension for his violation of NOPD Rule 4: Performance of Duty, Paragraph

4(B) Supervisory Responsibility for failure to properly investigate a complaint of

misconduct against Officer Webster.

### *Standard of Review*

The Louisiana Supreme Court, in consideration of an appeal from a CSC

ruling, has explained that:

> [a]n employee with permanent status in the classified civil service cannot be subject to disciplinary action by his employer except for cause expressed in writing. La. Const. art. X, § 8(A); *Lange v. Orleans Levee Dist.,* [20]10-0140, p. 2 n. 2 (La. 11/30/10), 56 So.3d 925, 928 n. 2. Legal "cause" for disciplinary action exists when the employee's conduct "impairs the efficient or orderly operation of the public service." Civil Service Rule 1.5.2.01; *AFSCME, Council # 17 v. State ex rel. Dep't of Health & Hosp.,* 01-0422, p. 8 (La. 6/29/01), 789 So.2d 1263, 1268. The appointing authority must prove, by a preponderance of the evidence, the occurrence of the complained of activity and that the conduct did in fact impair the efficient and orderly operation of the public service. *See Newman v. Dep't of Fire,* 425 So.2d 753, 754 (La. 1983).

*Regis v. Dep't of Police*, 2013-1124, pp. 1-2 (La. 6/28/13), 121 So.3d 665. This

Court explained that:

> [t]he standard of review for civil service cases in the appellate courts is multifaceted. *See Muhammad v. New Orleans Police Dep't.*, 2000-1034, p. 4 (La. App. 4 Cir. 7/11/01), 791 So.2d 788, 790. When reviewing the Commission's findings of fact, the appellate court must apply the clearly wrong or manifestly erroneous standard. However, when judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the reviewing court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion. *Id.*, 00-1034, pp. 4-5, 791 So.2d at 790-91 (*citing Wilson v. New Orleans Aviation Bd.*, 1996-1350, p. 2 (La. App. 4 Cir. 1/15/97), 687 So.2d 593, 595). Therefore, the appropriate standard of appellate review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission is arbitrary or capricious. *Id.* (*citing Palmer v. Dep't. of Police,* 97-1593 (La. App. 4 Cir. 1/28/98), 706 So.2d 658). As in other civil matters, deference should be given on appellate review to the factual conclusions of the Commission. *Id.* (*citing Newman v. Dep't. of Fire*, 425 So.2d 753 (La. 1983)). It is only when this court finds that the Commission's actions were arbitrary or capricious that it can disturb the Commission's judgment. *Id.*

*Aucoin v. Dep't of Police*, 2016-0287, pp. 3-4 (La. App. 4 Cir. 3/29/17), 229 So.3d

531, 533.

### *Analysis*

The NOPD penalty matrix outlines the level of discipline assigned to violations of either

NOPD policies or Louisiana state law.[6] *Cunningham v. New Orleans Police Dep't*, 2018-0095, p.

---

[6] The information contained in this chart was taken directly from the NOPD's Procedure Manual's Disciplinary Hearing and Penalty Schedule in effect at the time of Appellant's alleged violations. This Court takes judicial notice of the NOPD Penalty Schedule, which is accessible in the public domain. *Mendoza v. Mendoza*, 2017-0070, p. 6 (La. App. 4 Cir. 6/6/18), 249 So.3d 67, 71, *writ denied*, 2018-1138 (La. 8/31/18), 251 So.3d 1083; *Felix v. Safeway Ins. Co.*, 2015-0701, p. 7 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 632 & n.10.

6 (La. App. 4 Cir. 10/10/18), 257 So.3d 801, 805. The matrix, in pertinent part, shows the penalty schedule for NOPD Rule 4: Performance of Duty, Paragraph 4(B) Supervisory Responsibility,[7] the offense that Appellant allegedly violated, and provides that "[a] member with supervisory responsibility shall be in neglect of duty whenever he fails to properly supervise subordinates, or when his actions in matters relating to discipline fail to conform with the dictates of Departmental Rules and Regulations."

| Title | Category | 1st Offense | 2nd Offense | 3rd Offense |
|---|---|---|---|---|
| On Duty/Off Duty - Color of Law | XXXXXXXX | R[8]-30[9] | 30-D[10] | D |

Following a hearing, the CSC found that NOPD met its burden of proving that Appellant violated NOPD Rule 4: Performance of Duty, Paragraph 4(B) Supervisory Responsibility when he failed to properly investigate a complaint of misconduct against Officer Webster, to wit:  she failed to properly process a report regarding a traffic incident and prematurely terminated her body-worn camera. This Court, in *Meisch v. Dep't of Police,* explained:

> The CSC has a duty to determine whether the appointing authority has a good or lawful cause for taking disciplinary action and if so, whether punishment imposed is commensurate with the dereliction. *Walters v. Dep't of Police,* 454 So.2d 106, 114 (La.1984); See *Taylor v. New Orleans Police Dep't,* 00–1992, p. 3 (La. App. 4 Cir. 12/12/01), 804 So.2d 769, 772 (2001).

---

[7] NOPD Rule 4: Performance of Duty, Paragraph 4(B) Supervisory Responsibility was adopted September 1, 2013 (NOPD Policy 1021.6.4).

[8] The letter "R" represents "reprimand."

[9] The numbers represent the number of suspension days (working days).

[10] The letter "D" represents "dismissal."

8

> The discipline must have a rational basis to be commensurate with the dereliction or it is deemed arbitrary and capricious. *Staehle v. Dep't of Police,* [19]98-0216 (La. App. 4 Cir. 11/18/98), 723 So.2d 1031, 1032, 1033; *Walters, supra* at 114.

2012-0702, p. 11 (La. App. 4 Cir. 2/20/13), 110 So.3d 207, 214.

The first prong of our analysis addresses whether Appellant violated NOPD rules or policies. This Court, in *Clark v. Dep't of Police*, explained that NOPD "must prove: 1) that a violation of interdepartmental rules or policies occurred; and 2) that the violation impaired the efficient operation of the department." 2018-0399, p. 5 (La. App. 4 Cir. 10/10/18), 257 So.3d 744, 748. Appellant did not sustain Officer Webster's alleged violation of prematurely deactivating her body-worn camera and found Officer Webster's alleged violation of failing to properly process a report regarding a traffic accident unfounded; NOPD determined that Appellant's aforementioned recommendations were inconsistent with applicable NOPD policies, which have been outlined hereinabove and for that reason, NOPD imposed a two (2) day suspension against Appellant.

### *Body-worn camera*

Appellant argues that the NOPD policy regarding body-worn cameras that was introduced at the CSC hearing had an effective date of April 5, 2015, which took effect after the March 27, 2015 traffic accident. Appellant raised this argument at the CSC hearing, but did not object to the April 5, 2015 policy being admitted into evidence. This Court has explained that "[i]t is well established that when a party fails to contemporaneously object to the introduction of objectionable

9

evidence, that party waives the right to complain of the issue on appeal." *Aisola v. Beacon Hosp. Mgmt., Inc.*, 2013-1101, p. 10 (La. App. 4 Cir. 4/2/14), 140 So.3d 71, 78.

Moreover, as noted earlier, Policy 41.3.10 entitled, "Body-Worn Camera ("BWC")" was revised on 04/05/2015; it replaced policy 447, entitled, "Body-Worn Camera ("BWC")", which had been adopted on 03/11/2014 and was in effect during the pertinent time period of the instant matter. For purposes of this matter, the language contained in the subsection of the policy entitled, "Cessation of Recording" under both Policy 41.3.10 and Policy 447 are identical. Furthermore, the CSC, in its findings—in a footnote—acknowledged the following:

> The [CSC] observes that the [body-worn camera] policy in evidence has an effective date of April 5, 2015 [,] and purports to revise and replace an earlier version. Given that [Appellant] did not object to the introduction of the policy, the [CSC] finds that there were no substantive differences between the policy in place at the time of the vehicle accident Officer Webster investigated (March 27, 2015) and the April 5th version in evidence.

Pursuant to the NOPD body-worn camera policy, an officer must keep their body-worn camera activated "until an investigative or enforcement contact or incident has concluded." The policy further defines the conclusion of an investigative or enforcement contact or incident as "when an officer has terminated contact with an individual, cleared the scene of a reported incident or has completed transport of a civilian or arrestee." At the CSC hearing, Deputy Superintendent Noel testified that he reviewed the footage captured by Officer Webster's body-worn camera and

observed that the body-worn camera was terminated while Officer Webster was still interacting with one of the drivers regarding an earlier traffic accident. As a result, Deputy Superintendent Noel concluded that Officer Webster had violated NOPD policy. Appellant contended that Officer Webster was interacting with a driver concerning a different traffic accident. Lt. Sanders testified that despite the fact that Officer Webster may have been discussing a different traffic accident, she was still engaged in investigatory activities and her body-worn camera should have remained activated in accordance with applicable NOPD policy pertaining to body-worn cameras.

### *Traffic Report*

Officer Webster failed to assess fault and issue a traffic citation at the scene of the March 27, 2015 traffic accident. Additionally, Officer Webster's report contained errors regarding the date of the traffic accident and air bag deployment. Pursuant to NOPD Policy 502.4, "when a reasonable determination of fault cannot be established, the officer must consult with the City Attorney for the New Orleans Traffic and Municipal Court within five (5) business days and the City Attorney's recommendations must be documented in a supplemental report." While Officer Webster did, in fact, consult with the City Attorney, she failed to file a supplemental report documenting the City Attorney's recommendation and Appellant failed to include that information in his report; Appellant explained that it was "an oversight." Additionally, Appellant concluded that Officer Webster's errors concerning the date of the traffic accident and air bag deployment

constituted mistakes or oversights that simply needed to be corrected or "put into the proper places." Appellant testified that at the time of the traffic accident at issue, Officer Webster had recently returned to work after a prolonged absence due to injury or illness and was unaccustomed to completing traffic reports on the computer rather than on paper; consequently, Officer Webster had inadvertently struck an erroneous key. Appellant concluded that Officer Webster needed counseling or training rather than being subjected to a disciplinary violation.

NOPD asserted that Appellant's conclusion that Officer Webster's alleged violations were unfounded and not sustained were so erroneous that they constituted supervisory negligence. NOPD further asserted that Appellant was either unfamiliar with NOPD policies or failed to conduct a thorough investigation. Appellant admitted that in making his conclusions regarding Officer Webster's alleged violation, he "went off the top of [his] head." As such, Appellant's unfamiliarity with NOPD policies impaired NOPD's efficient operations.

The CSC recognized that Appellant took into consideration Officer Webster's recent return to duty from a prolonged absence due to injury or illness, but concluded that such a mitigating factor was appropriate for consideration in the penalty phase of the investigation, not the violation phase. The CSC found that NOPD proved that Appellant failed to execute his supervisory duty. We agree with the CSC's conclusion and find that the CSC did not err.

*Two (2) day suspension*

The second prong of our analysis addresses the two (2) day suspension that NOPD imposed on Appellant. This Court, in *Clark*, explained that "[t]he punishment imposed on a police officer for violating police department rules must be commensurate with the dereliction. *Walters,* 454 So.2d at 113. 'The discipline must have a rational basis to be commensurate with the dereliction or else it is arbitrary and capricious." *Waguespack v. Dep't of Police*, [20]12-1691, p. 5 (La. App. 4 Cir. 6/26/13), 119 So.3d 976, 978.'" 2018-0399, pp. 6-7 (La. App. 4 Cir. 10/10/18,); 257 So.3d at 749. Pursuant to the NOPD penalty matrix, a first offense for a violation of Rule 4: Performance of Duty; Paragraph 4(B) Supervisory Responsibility carries a penalty range from a letter of reprimand to a thirty (30) day suspension. Here, this was Appellant' first offense of Rule 4: Performance of Duty; Paragraph 4(B) Supervisory Responsibility, and NOPD only imposed a two (2) day suspension, which is well within the lower-end of the penalty range available to the NOPD. We find that the two (2) day suspension that NOPD imposed and the CSC upheld was not arbitrary and capricious.

## CONCLUSION

For the aforementioned reasons, we affirm the CSC's ruling upholding NOPD's two (2) day suspension of Appellant.

**AFFIRMED**