MOORE, J.
|, Aliene Fields, in proper person, appeals a judgment rejecting the petition of Greenwood Community Center (“GCC”) for declaratory judgment that an act of cash sale was null and void, and ordering GCC to pay the defendants’ attorney fees. We affirm.

Factual Background

Ms. Fields testified that she was “president manager” of GCC, a corporation that she founded when “God gave me the plan.” In 1988, GCC bought a tract of land, some 6⅜ acres, on Greenwood-Springridge Road in southern Caddo Parish, from Frank S. Messinger for $39,000. The deed recited that GCC paid $10,000 and that Messinger granted a mortgage for the balance, $29,000. At some point GCC put up a *472 building on the property to serve as the community center.
The contested cash sale took place in December 1991. Ms. Fields’s sister, Mattie Calep, and her husband, Frank (residents of Chicago), made out a check to Messinger for $25,000 and sent it to Wayne Webb, an attorney and notary in west Shreveport. (Webb testified that he had known the lender, Messinger, for years.) Webb jotted on the check, “The mortgage note will be released for cancellation.” On December 30, 1991, Webb notarized the act of cash sale from GCC to the Caleps for the stated price of $25,000. Webb did not specifically recall the closing, but testified that because he did not know Ms. Fields, he would have asked to see her driver’s license before she signed; he added that the two witnesses to the sale were secretaries in his and an adjacent office. He was positive that Ms. Fields came to his office and signed the sale on behalf of GCC. He also testified that he did not think GCC actually received any cash but was merely | ^relieved of the balance on the mortgage. The act of sale was recorded December 31, 1991. Webb also notarized an assignment of the mortgage note from Messinger to the Caleps; this was recorded March 11,1992.
According to Ms. Fields, the Caleps never took possession of the property. In her view, the $25,000 they sent to Messinger was their gift to GCC and the church. However, in August 1998, Webb advised Ms. Fields by letter that the Caleps claimed ownership of the property and that she and “anyone acting on behalf of’ GCC should stay off.

Procedural History

In August 2011, GCC, acting through counsel but “represented herein” by Ms. Fields, filed this suit against the Caleps, alleging that the 1991 cash sale was “fraudulent” and that GCC had been in peaceful possession of the property ever since; in the alternative, she alleged GCC held title by acquisitive prescription. She demanded a declaratory judgment that the 1991 cash sale was null and void, and that GCC was owner of the property.
The Caleps filed a general denial and, almost a year later, a motion for summary judgment. They showed that the 1991 cash sale, as a notarial act, was self-proving, and that Ms. Fields had raised only conclusory allegations of fraud. In support, they attached Webb’s affidavit, confirming that Ms. Fields indeed signed the 1991 cash sale; and their own affidavit, stating that they had made no misrepresentations to Ms. Fields, and had been paying property taxes on the tract since December 30, 1991. They also attached a certified copy of a resolution of GCC’s board of directors, dated January 2, 1992, authorizing Ms. Fields to sell the property to the Caleps for $25,000, |sand ratifying her prior act of signing on behalf of the corporation. The resolution is signed by GCC’s secretary, Michelle Caldwell.
Ms. Fields opposed the motion, asserting that the $25,000 was a gift from the Caleps, and reiterating that the 1991 cash sale was fraudulent. In support, she attached her own affidavit, stating that until her sister (Mrs. Calep) contacted her within the last year, she had no idea the Caleps were claiming ownership of the property; she always “maintained that title was listed” under GCC; she “did not knowingly transfer title” to the Caleps; and she “did not sign and would not have signed” such documents.
On the strength of Ms. Fields’s attachments, the district court denied the motion for summary judgment.
Two months later, the Caleps filed the instant rule for sanctions and attorney fees. They asserted that the 1991 cash *473 sale was self-proving and supported by the board’s resolution; Ms. Fields made an affidavit simply denying that she signed it, but because the evidence was overwhelming that she did, her affidavit had no evi-dentiary support and was raised for an improper purpose, La. C.C.P. art. 863 D. They attached their attorney’s affidavit of fees totaling $12,120.40.

Action in the District Court

At a hearing on February 11, 2013, the court stated without objection that it would try the entire matter: if Ms. Fields offered no proof that her signature on the 1991 cash sale was a forgery, the court would grant the rule, impose sanctions and dismiss GCC’s suit for declaratory judgment. The court also stated that the Caleps were not present when the 1991 cash sale was executed, so Ms. Fields would have to show who had a motive to Lforge her signature to it.
The Caleps’ only witness was the attorney, Wayne Webb, who testified as outlined above. He confirmed that he notarized the 1991 cash sale and would have made Ms. Fields present her identification before signing, so he was certain that she actually signed it.
Ms. Fields also testified as outlined above, maintaining resolutely that she did not sign the 1991 cash sale, it was “false,” and she disagreed with Webb’s testimony. She insisted that the $25,000 was a gift for the church’s work, nothing more. Questioned by the court, she admitted not knowing who forged her name, but “someone messed me up.” She also asserted that the corporate resolution was “falsely done,” but admitted it was signed by the secretary. She explicitly conceded she had no expert witness to say the signatures were forged.
Ms. Fields also called a character witness, Danny Wilburn, who said that she has a reputation for honesty in the community. Neither side called the Caleps from Chicago.
The court ruled from the bench that it had denied the Caleps’ motion for summary judgment because of Ms. Fields’s affidavit; however, after hearing the testimony, the court felt that with the passage of time Ms. Fields had mischaracterized the events of December 1991. She failed to prove a forgery, especially who would have done it or had the motivation to do it. The court found the corporate resolution decisive. The court granted the rule for sanctions and dismissed GCC’s claim for declaratory judgment. Later, judgment was rendered to that effect, ordering GCC to pay $12,120.40 for the Caleps’ attorney fees.
lfiMs. Fields, pro se, filed a motion for suspensive appeal. The Caleps later moved to dismiss the appeal for failure to post the $13,000 bond. The court ultimately converted it to a devolutive appeal.
GCC’s counsel then filed a motion to withdraw, which this court granted on August 20, 2013. Ms. Fields has proceeded in proper person.

The Parties’ Positions

By handwritten pro se brief, Ms. Fields gives a history of GCC, stressing its strong community involvement. On the merits, she argues, “Aliene Fields did not sale [sic ] the property” to the Caleps and “did not sign any deed in Mr. Webb [sic] office.” She contends that her “name was type [sic ] in by someone,” Webb’s testimony was not true, the Caleps failed to testify, the corporate resolution ratifying the sale “is fraud,” and the Caleps “never told me what they were doing.” Attached to her brief are documents not in the record, including a printout from the Louisiana Secretary of State showing that GCC is a nonprofit corporation in good standing; an uncertified statement from Michelle Cald *474 well Dickerson, GCC’s secretary, that she did not witness or sign any paperwork or contracts regarding the sale of the property; and copies of newspaper articles extolling GCC’s work.
Ms. Dickerson has also filed a pro se brief, largely reiterating Ms. Fields’s factual (and off-the-record) contentions. She urges that all the board approved was to let the Caleps take a $25,000 tax writeoff for paying the mortgage; they never told the board they intended to buy the property. She also asserts the judgment is unsound because the Caleps did not testify |6as to the source of the original documents, and asks this court to render judgment declaring GCC the owner of the property.
The Caleps respond that the 1991 cash sale, as an authentic act, constitutes full proof of the agreement, La. C.C. art. 1885, and anyone attacking an authentic act must bring “strong proof’ of its invalidity, Ritz v. Ritz, 95-683 (La.App. 5 Cir. 12/13/95), 666 So.2d 1181, writ denied, 96-0131 (La.3/8/96), 669 So.2d 395. Aside from Ms. Fields’s testimony, GCC produced not one shred of evidence that the 1991 cash sale was fraudulent; by contrast, the Caleps offered the testimony of Webb, who established that Ms. Fields signed the 1991 cash sale; the resolution confirming the sale; and the mortgage assignment. They also suggest that the action was prescribed, as Webb notified Ms. Fields of the Caleps’ claims in August 1998 but suit was not filed until August 2011. Finally, they show that GCC is a corporation, but Ms. Fields appealed in her own name, not on behalf of the corporation, and she lacks standing to appeal. Deal v. Lexing-Powell, 36,168 (La.App. 2 Cir. 8/16/02), 824 So.2d 541, writ not cons., 2004-0165 (La.3/19/04), 869 So.2d 836; Seelig v. Kit World Super Store, 97-1592 (La.App. 4 Cir. 1/21/98), 705 So.2d 806. They urge that the judgment be affirmed or the appeal dismissed.

Discussion

We note at the outset that Ms. Fields’s brief does not comply with URCA 2-12.4 in numerous particulars: it does not specify or allege errors, make arguments confined strictly to the issues of the case, or provide citations to the record or authorities relied on. In the interest of justice, however, this court will read pro se filings indulgently and attempt to |7construe a brief as though assignments were properly raised. Capital One NA v. Walters, 47,157 (La.App. 2 Cir. 6/20/12), 94 So.3d 972; Graham v. McKinney Nissan, 39,656 (La.App. 2 Cir. 6/29/05), 907 So.2d 213. We therefore decline to reject the brief for noncompliance. We also find that Ms. Fields took this pro se appeal around the time her lawyer withdrew; as a non-lawyer, Ms. Fields perhaps did not appreciate the need to designate the corporation, and not herself, as the appellant. On these unique facts, we decline to dismiss the appeal as “of no legal effect,” a result suggested in Deal v. Lexing-Powell, supra.
However, even with the leeway or patience extended to a pro se litigant in the form of liberally construed pleadings, the pro se claimant is required to meet her burden of proof. Manichia v. Mahoney, 2010-0087 (La.App. 4 Cir. 8/4/10), 45 So.3d 618, writ denied, 2010-2259 (La.11/24/10), 50 So.3d 829. On close review, we detect no manifest error in the district court’s findings.
The 1991 cash sale is an authentic act. An authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title. La. C.C. art. 1835; Succession of Robinson, 94-2229 (La.5/22/95), 654 So.2d 682. A *475 person denying the validity of her signature on an authentic act bears the burden of proving the forgery. Szmyd v. Wingate, 341 So.2d 1271 (La.App. 2 Cir.), writ not cons., 344 So.2d 3 (1977); Coleman v. Egle, 376 So.2d 983 (La.App. 1 Cir.1979), writ denied, 379 So.2d 15 (1980); Thompson v. Woods, 525 So.2d 174 (La.App. 3 Cir.1988). The trial court’s findings of fact cannot be disturbed unless they are manifestly erroneous or plainly wrong. Menard v. Lafayette Ins. Co., 2009-1869 (La.3/16/10), 31 So.3d 996.
The 1991 cash sale is an authentic act and proves its contents: that GCC sold to the Caleps the described property for $25,000. In addition, the notary testified that he required people to present identification before signing documents; he was certain that Ms. Fields did so and actually signed the cash sale. The resolution of GCC’s board fully corroborates the sale, stating that the property is “to be sold” by GCC to the Caleps for $25,000. The assignment of the mortgage note from the original lender to the Caleps, as well as Webb’s 1988 letter to Ms. Fields, further support the fact of the sale. In opposition, Ms. Fields offered only her own testimony, a recollection of events some 21 years earlier and reasonably discounted by the district court. She provided no forensic evidence of a forgery, and no theory of who might have forged her name, or when or how it could have happened. It is true that the Caleps did not testify, but the burden of calling them fell on Ms. Fields, as she was alleging forgery. She failed to do so. On this record, the district court was not plainly wrong to reject the claim of forgery, dismiss the demand for declaratory judgment, and assess attorney fees under La. C.C.P. art. 863 D.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are to be paid by the appellant, Greenwood Community Center.
AFFIRMED.