ROBERT M. MURPHY, Judge.
| gPlaintifflappellant, Lloyd Richard (“Richard”) appeals the trial court’s judgment in his personal injury lawsuit, which dismissed the petition with prejudice following a bench trial. For the reasons that follow, the judgment of the trial court is affirmed.
*275 FACTS AND PROCEDURAL HISTORY
The instant civil matter has been the subject of several prior writ applications and stems from events recounted by this Court in Richard’s criminal appeal.[1] Richard was arrested' in St. James Parish on January 26, 2008, on charges of attempted second degree murder and aggravated burglary. On January 2, 2009, Richard filed a civil suit • in proper person, alleging that he had been injured during his arrest, when the pólice cruiser he was being transported in backed into a ditch.[2] The matter proceeded to a bench trial on May 12, 2016.
| ¡¡John Dunn testified at trial that on January 26, 2008, while on duty, he was the driver of the police vehicle that transported Richard after he was taken into custody. While backing up the vehicle “to go on LA 44 from Fields Street,” Dunn’s “right back tire went into the ditch on top of the culvert” and had to be pulled out later by a wrecker. Dunn stated that when the vehicle backed into the ditch, he saw Richard in the rear view mirror slide “over to the middle” of the back seat while calling out to his friends through the window, saying, “You see this?” Dunn testified that after he had backed on top of the culvert, Richard did not tell him that he had sustained neck and back injuries, but asked to be “checked out.” There was no noticeable injury to Richard at that time. On cross examination, Dunn testified that he was going “very slow” as he backed up from Fields Street on to LA 44. Dunh stated that the only impact when entering the ditch occurred when the rear tire “went straight .down” onto the culvert; there was no motion forward or backward.
. Chief of Deputies Heria Williams, was present at the scene on January 26, 2008, when .Richard was taken into custody. Williams testified that he did not see Dunn back the tire over the culvert in the ditch, but he observed the car after it had happened. He did not recall seeing that anything was “physically wrong” with Richard after the car backed into the ditch, and Richard did not complain to him about any pain in his neck or back. Williams stated that he told a guard that if Richard complained of injuries, to take him to the doctor. Williams was never informed as to whether Richard received medical attention at the jail. Williams did’ not recall meeting with anyone to discuss the incident regarding'the vehicle backing into the ditch. - ’ ’
|4On cross examination, Williams testified that Dunn did not appear impaired prior to or after he backed into the ditch. Williams was aware of another incident during which Richard could have been injured that day. Williams stated that the victim of the crime for which Richard was convicted, had indicated that she fought Richard off as he tried to sexually assault *276 and stab her. The victim also said that during the struggle, Richard wound up on the floor after she threw him off.[3]
Detective Claude Louis testified that he was the investigating officer at the time of Richard’s arrest. Richard was already in a police unit by the time that Louis arrived on the scene. Detective Louis did not see the car back into the ditch. Later that day, Detective Louis interviewed Richard, and at no time did Richard request medical attention. Detective Louis was shown a transcript of his prior testimony at Richard’s criminal trial, wherein he indicated that Richard had a scratch under his eye and on his finger at the time Richard was interviewed after being arrested. Detective Louis attributed these scratches to the victim, who indicated that she had scratched defendant while she fought him off.[4]
Evans Joseph testified that he was assisting officers who were searching for Richard on the date Richard was arrested. Joseph went to Fields Street on that day to transport Richard after his arrest. Richard did not seem to be injured when he was placed in Joseph’s car, and Richard did not complain of any injuries while in Joseph’s custody. Joseph said that if Richard had demonstrated any injuries, the jailers “would not have accepted” him, and he would have been transported to the hospital.
|BRichard testified at trial. He stated that at the time the police car “hit the ditch,” he was thrown forward “into the bars of the vehicle.” He said that he told Williams that his neck and back were hurting and that he needed medical attention. He said that he told each officer he was in contact with that he was hurt. Richard asserted that the officers’ testimony at trial that day was false. Richard recounted two prior incidents where he had received a back injury. The first was in a car accident in 1979. Next, in 2005, while in Orleans Parish jail, he was knocked to the floor from the top bunk of a bed by another inmate. Richard also acknowledged that the victim of the crime, for which he was charged and convicted, had indicated that there was an altercation with Richard on the day he attacked her. Richard further stated that he was a boxer who had been knocked down many times. Richard gave contradictory statements about the cause of the scratch on his face, first testifying that he got the scratch in the police car when it rolled into the ditch, and then asserting that he got the scratch as retaliation from jail personnel for making a claim that he was injured.
Richard testified about the doctors who treated him for his alleged injuries after January 26, 2008. Richard’s first medical request form was filled out three days after he claims he was injured. Richard stated that from 2008 until trial, he could not turn his neck, and his shoulders constantly hurt him. Richard said that 20 days after his arrest, he saw Dr. Carl Poche, who diagnosed him with lumbar strain and a sprained neck. He was given pain pills and a muscle relaxer, as well as a sheet with exercises he was supposed to perform. Richard had one follow up visit with Dr. Poche’s office. Richard stated that Dr. Poche’s report was inaccurate in *277 stating that Dr. Poche had found no muscle spasm, that Richard was able to bend down almost completely to touch his toes, and that he had found a full range of motion in Richard’s head and neck. In December of 2008, Richard was examined |Bat Chabert Hospital, after which he was diagnosed with muscle spasm and “degenerative disc disease.”
In making its determination of whether to impose liability under La. C.C. art. 2315, the trial court' correctly employed the duty/risk analysis and referenced the five separate elements that a plaintiff is required to prove in a negligence case: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).
The court first made a finding that Dunn had breached his duty to operate his vehicle “in conformity with the laws and regulations of this state and in a reasonable manner” by backing his vehicle into a ditch,' thus satisfying elements one and two of the duty/risk analysis.
With regard to causation for Richard’s alleged injuries, which encompassed elements three through five of the duty-risk analysis, the trial court first referenced a standard used by this Court in Cannet v. Franklynn Pest Control Co., 08-56 (La. App. 5 Cir. 04/29/08), 985 So.2d 270, 276, wherein we noted that, “Expert medical testimony is required when the conclusion regarding medical causation is one-that is not within common knowledge.” The trial court also referenced the case of Kliebert v. Breaud, 13-655 (La.App. 6 Cir. 01/31/14), 134 So.3d 23, in which we recognized that when a plaintiff provides no medical testimony to establish a causal relationship between an accident and a claimed injury, the court is required to make a credibility determination regarding a plaintiffs testimony about his ^injuries. The court then recounted the evidence and witness testimony, and noted that as to the crime that Richard had been convicted of, the victim had testified at the criminal trial that she believed she had scratched Richard and pushed him from the bed onto the floor. When Detective Louis noticed the scratch under defendant’s eye and on his finger, based upon the victim’s statement, Detective Louis attributed the injuries to the victim fighting off Richard. The court found that Richard had testified “in a contradictory manner” about the cause of his injuries at trial, first stating that he had received the scratches from hitting his face on the cage of the police unit when the vehicle went off the road, and then claiming that the scratches were “caused by police officers at the jail.” The court recalled that the testimony of Dunn, Louis and Williams was that Richard did not complain to them about injuries after the car had gone off of the road.. The court found that were “multiple possible causes” for Richard’s neck and back pain, which included his history as a boxer, a medically-documented degenerative disc disease, and a struggle on the night before the accident with the victim of the crimes for which he was charged. The court determined that while the St. James Sheriffs Department had “breached its duty to operate the vehicle in a safe rnanner,” the breach of that duty was not “a substantial factor in the cause of Mr. Richard’s injuries.”’
*278 At the conclusion of trial, the trial judge designated her oral reasons for judgment as her - written reasons. The Judgment rendered on May 12, 2015, indicated that “the Court finds in favor of the Defendants and against the Plaintiff, as the Plaintiff has failed to meet his burden of proof on the issue of causation,” Richard timely filed a motion for the instant appeal,, which was granted.[5]
^ASSIGNMENT OF ERROR
Where pro se litigants are concerned, in the interest of justice, Louisiana appellate courts will read pro se tilings indulgently and attempt to construe a brief as though assignments of error were prop-¿rly made.[6] Greenwood Cmty. Ctr. v. Calep, 48,737 (La.App.2d Cir.1/15/14), 132 So.3d 470. In this matter, after affording a liberal construction to appellant's pleadings, Richard essentially argues that the trial court erred in finding that he failed to meet his burden of proof on the issue of causation. '
LAW AND DISCUSSION
It is well settled that a court of appeaPmay not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences offact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as ’ reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). This test dictates that a reviewing court must do more than simply review the record for some evidence that may controvert the trial court ruling.- Rather, it requires a review of the entire record to determine whether manifest error has occurred. Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-tinder’s conclusion was a reasonable one. Clay v. Our Lady of Lourdes Regional Medical Center, 11-1797 (La.5/8/12), 93 So.3d 536, 543. Where there are two permissible views of the evidence, the fact tinder’s choice between them cannot, be manifestly erroneous or clearly wrong. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 278-79; Tompkins v. Savoie, 08-808 (La.App. 5 Cir. 3/24/09), 10 So.3d 294.
' In this case, the trial court found that Richard had not met his burden of proof on the issue of causation. Our review of the record reveals the following: While Richard asserted that he was hurt when the cruiser backéd over the culvert, witnesses at trial testified that Richard’appeared uninjured and did not request medical attention. Richard’s account regarding the range of motion in his neck and shoulders following the accident was contradicted by his own medical- records. A reading of the trial transcript clearly supports the trial court’s finding that Richard gave contradictory statements and testimony at trial, regarding the cause of the scratch that, was observed on. the *279 day of his arrest. The record further contains an admission by Richard that he had sustained back injuries prior to the alleged injury of January 26, 2008. Richard also acknowledged that the' victim of the crime, for which he was convicted, had indicated that during a struggle with Richard she threw him from a bed and on to the ground.
In the instant case, after considering the entire record, as well as the testimony and evidence presented at trial, we find the trial court’s conclusion, that Richard failed to prove causation of his alleged injury, to be reasonable and not manifestly erroneous.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s May 12,2015 judgment.

AFFIRMED.

JOHNSON,' J., dissents with reasons.

. See State v. Richard, 12-310 (La.App. 5 Cir. 4/24/13), 115 So.3d 86, 94, writ denied, 13-1220 (La.12/2/13), 126 So.3d 497.

. In a subsequent motion to amend his petition, filed on January 20, 2015, Richard further alleged that members of the St. James Parish Sheriff’s Department denied him medical treatment for injuries to his neck and back resulting from the accident, and that the Sheriff’s Department further conspired to "cover up" the accident through various means. The record reflects, however, that on April 9, 2015, the trial court denied Richard’s Motion To Amend Pleadings as untimely pursuant to its Case Management Order of December 10, 2014. This Court upheld the trial court's denial of Richard’s Motion To' Amend Pleadings in Richard v. St. James Par. Sheriffs Office, 14-775 (La.App. 5 Cir. 10/28/14) (unpublished writ disposition).- Thus, these claims were not before the court at the time of trial, and cannot be addressed by this Court for the first time on appeal. See Uniform Rules — Courts of Appeal, Rule 1-3.

. While Williams’ statement about what the victim told him is hearsay, we note that no objection to this testimony was made at trial. Further, as noted below, Richard himself acknowledged that the victim of the crime for which he was convicted had alleged that she .fought with Richard at the time he attacked her.

. As with Williams' statement above, Detective Louis’ statement about what the victim .told him is hearsay. However, no objection to this testimony was made at trial.

. Richard represented himself at trial, and also is in proper person on appeal.

. However, even with the leeway or patience extended to a pro se litigant in the form of liberally construed pleadings, the pro se claimant is still required to meet his burden of proof. See Greenwood Cmty. Ctr. v. Calep, supra. Notwithstanding that a layman who represents himself cannot be held to the same standards of skill and judgment which must be attributed to an attorney,-’he assumes responsibility for his own inadequacy and lack of knowledge of both procedural and substantive law. See Cutler v. McGee, 09-1290 (La. App. 3 Cir. 5/5/10), 38 So.3d 481, writ denied, 10-1879 (La.11/19/10), 49 So.3d 393/