Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,348-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROMONICA D. MCNEAL                    Plaintiff-Appellee

versus

JAMES JACKSON                         Defendant-Appellant
CAR CITY LLC

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2024-CV-01197

Honorable Tammy D. Lee, Judge

* * * * *

JAMES JACKSON                         In Proper Person, Agent
                                      for Car City LLC


ROMONICA D. MCNEAL                    In Proper Person


* * * * *

Before PITMAN, ROBINSON, and ELLENDER, JJ.

**ELLENDER, J.**

James Jackson, owner of Car City LLC, appeals a judgment of the Monroe City Court ordering him and Car City to pay the buyer, Romonica McNeal, a refund of her down payment on a car plus incidental costs. For the reasons expressed, we amend the judgment to conform to the documentary proof of the down payment and to cast only Car City in judgment, not Jackson individually.

## THE PARTIES' ALLEGATIONS

McNeal's handwritten petition alleged she went to Car City, on Winnsboro Road in Monroe, and bought a 2010 Camaro, canary yellow, with 188,000 miles, for $11,800, paying $6,000 down and financing the rest. The day she bought it, the headlights would not come on; Jackson told her they would cut on eventually. The next day, when she cranked the car up, it made all manner of noise and took 10 minutes to start; she then brought it to a mechanic, who found "so many" diagnostic codes in the transmission and motor. She then called Jackson, who told her the vehicle just needed a tune-up and oil change; she brought it in, and Jackson carried it to Ink's Firestone, on Breard Street in Monroe, where they did some work on the car but could not get the lights to work right. For two months she continued trying to get Jackson to fix the car, but he kept putting her off. Meanwhile, she lost her job with a trucking company, she asked for her down payment back, and Jackson refused, so she filed this suit in Monroe City Court.

Jackson, also pro se, answered that McNeal bought the Camaro "as is," refusing to buy any warranty, on April 4, 2024. He denied she paid $6,000 down, and asserted he refused to return her down payment because,

under the contract, all deposits were nonrefundable. He felt the car drove "very good," and on April 18, 2024, McNeal posted to Facebook a picture of herself standing in front of the car, bragging on it and saying how much she loved the car. The problem, Jackson asserted, was that McNeal never made one single payment on the car, so the lender repossessed it.

### TRIAL EVIDENCE

The matter came to trial in Monroe City Court on July 29, 2024. Both sides were self-represented, often testifying narratively and repetitively.

McNeal testified the sale price of the car was $11,800, she made a down payment of $5,500, and, after costs, she still owed $8,381.92, which she financed through Western Funding. From the impassive record, her testimony is digressive and inconsistent; at various times, she said her down payment was $5,000, $5,500, or $6,200. She admitted her first note was due in June, but the car was still in the shop at the time, so she made no payment and eventually returned the car. She added that Jackson subsequently placed the same car for sale, on Facebook Marketplace, for $5,500 or $5,000, and she thought he had sold it by the time of trial. She concluded that she wanted her $6,000 deposit, a $275 "flag" on her license for failing to return the tags, and $20 for the fine she paid for lack of registration.

McNeal offered three items of evidence. Ex. P-1, the bundle of papers she signed when buying the car, includes a "Buyer's Order" which lists the down payment as $5,500 and the seller as Car City LLC (not Jackson personally). Ex. P-2, papers from the Office of Motor Vehicles, shows that she paid $20.00 to register the car, on April 8, 2024; her registration and driver's license were "blocked" because, as of May 20, 2024, she had dropped her liability coverage, with Progressive Paloverde

2

Insurance, and she would owe $275.00 for reinstatement. Ex. P-3, the receipt from Ink's Firestone, dated April 8, 2024, lists the customer as Car City, shows work on the crankshaft, sensor, and spark plugs for a total of $324.00, and is marked "Paid Cash." It also bears the handwritten notation, "Low beams are working properly – high beams are not."

McNeal's cousin, Talvin Eleam (Jackson called him a "friend" of hers), tried to corroborate her testimony. He testified Jackson called McNeal several times, begging her to make the first payment, so he (Jackson) would not have to retake the car and refund Western Funding. However, the car was such a lemon that she refused and returned the car to Car City.

Jackson's testimony, like McNeal's, was narrative and inconsistent, and unreconcilable with McNeal's. He said the buyer was aware the vehicle was a sports car, with a "cam" in it, a "bumblebee Camaro," all souped up; she posted a picture of herself with the car on April 3, plainly showing the lights were working. At various times, Jackson said the down payment was $5,500 or $4,800. He described his financing arrangement with Western Funding: if a borrower failed to make the first payment, he (Jackson) would have to take back the car and repay Western Funding its advance (here, $5,567). He was also out of pocket $1,393 for registration and plates. Almost every other page of the trial transcript, he called McNeal a "liar" or a "compulsive liar."

Jackson also introduced several items of evidence. Ex. D-1 is a screenshot of McNeal posing in front of the car, at night and with the lights on; the picture is not dated. Ex. D-4 is a "funding notice" from Western Funding, undated, but saying Car City's sale to McNeal was "booked" and Jackson would be receiving a net check of $5,567.00 within 30 days. Ex. D-

3

5 is a "notice of payment default and reassignment demand" from Western Funding to Car City, dated May 26, 2024, saying the customer "failed to tender one (1) payment * * * by the due date in the Contract," and demanding that Car City remit to Western Funding the advance plus a fee, totaling $5,817.00.  Ex. D-6 is a copy of Car City's wire transfer of this amount to Western Funding, dated May 28, 2024.  Ex. D-12 is a screenshot of McNeal's Facebook page, April 18, 2024, with a picture of the Camaro and her message, "Thanks bae /bd/bff 4 my new whip … loving it[.]"  Ex. D-13 is another screenshot from McNeal's Facebook page, June 22, 2024, saying, "Please do not purchase anything from this Carlot … he will take your down payment … and lie to you and say it is A1 … He is a crook and call himself a God fearing man. * * * u a low down dirty dog[.] * * * Didn't no bank repo no car.  I told the bank to come get the car before the payment was due."[1]

### ACTION OF THE CITY COURT

The City Court ruled from the bench that Jackson was "not telling the truth."  The court found the sale was April 3, 2024, for a 2010 Chevy Camaro, mileage 181,878, at a price of $11,800; however, the "book value" was only $3,600, and it was "crazy" that Jackson would sell a car in this condition at this price.[2]  The court initially stated the down payment was $5,500 and rejected Jackson's testimony that the car was surrendered for

---

[1] Three-dot ellipses are on the original FB post; three-asterisk ellipses are this court's redaction of the profanity in the post.

[2] This court notes that nobody asked the City Court to take judicial notice of the car's value, nobody offered a copy of NADA, Kelley Blue Book, Edmunds, or any other standard price guide, and nobody had the chance to traverse the City Court's "finding" as to value.  We question whether the value of a used car is "not subject to reasonable dispute" and thus a proper matter for judicial notice, La. C.E. art. 201 (B)(2), but, in light of our resolution of the case, we decline to address this issue.

nonpayment; rather, the court found, McNeal returned it because it was a "lemon." The court further found Jackson was dishonest in telling McNeal the car needed only an oil change; the court labeled the whole deal a "scheme." The court awarded McNeal damages of (1) $275 for license tags she never received, (2) $324 for repairs at Ink's Firestone, (3) $6,000 for the down payment, and (4) $20 for the duplicate registration.

The clerk of court prepared the judgment, in favor of McNeal and against "Mr. James Jackson, owner, representing the Defendant herein, Car City LLC, appearing as a Self-Represented Litigant," for $6,619.00. Jackson took this pro se suspensive appeal.

## DISCUSSION

We note at the outset that Jackson's brief does not comply with URCA 2-12.4 in several particulars – no jurisdictional statement, concise statement of facts, assignments of errors, list of issues presented, statement of relevant facts, argument, or conclusion stating the relief sought. In the interest of justice, this court will read pro se filings indulgently and attempt to construe a brief as though assignments were properly raised. *Greenwood Cmty. Ctr. v. Calep*, 48,737 (La. App. 2 Cir. 1/15/14), 132 So. 3d 470; *Capital One NA v. Walters*, 47,157 (La. App. 2 Cir. 6/20/12), 94 So. 3d 972. We therefore did not reject the brief for noncompliance. However, even with the leeway or patience extended to a pro se litigant in the form of liberally construed pleadings, the pro se claimant is required to meet his burden of proof. *Greenwood Cmty. Ctr. v. Calep*, *supra*.

The bulk of Jackson's brief is a reiteration of his own testimony, a broadside on McNeal's credibility, and a general sense that the City Court got it wrong. The standard of appellate review, recently confirmed in

5

*Hayden v. Boutte*, 23-00864 (La. 10/25/24), 395 So. 3d 835, is that the appellate court may not set aside the trial court's finding in the absence of manifest error or unless the finding is clearly wrong. "When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.*, quoting *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989).[3]

Recognizing both witnesses' credibility issues, we cannot find manifest error in the City Court's decision to credit McNeal over Jackson. His testimony – like his handwritten brief – is defensive and recriminating to such as degree as to diminish its reliability. The legal underpinning is redhibition: the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520. The thing sold must be reasonably fit for its ordinary use. La. C.C. art. 2524. If the seller is unable or fails to repair, remedy, or correct the defect, he is bound to return the price to the buyer. La. C.C. art. 2531. On this record, the City Court was fully justified in finding the Camaro was not reasonably fit for its ordinary use, Jackson was unable or failed to repair it, McNeal returned it to him, and Jackson was bound to restore the price. We perceive no manifest error in the court's general finding.

---

[3] We acknowledge the vivid, nearly eidetic formulation in a federal case cited by McNeal in brief: "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Parts & Elec. Motors Inc. v. Sterling Elec. Inc.*, 866 F. 2d 228, 233 (7 Cir. 1988), *cert. denied*, 493 U.S. 847, 110 S. Ct. 141, 104 L. Ed. 2d 100 (1989).

6

There is, however, an important corollary to the manifest error rule: when, among other things, documents or objective evidence contradict a witness's story to such an extent that a reasonable factfinder would not credit the story, the appellate court "may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination." *Jones v. Market Basket Stores Inc.*, 22-00841 (La. 3/17/23), 359 So. 3d 452, citing *Rosell v. ESCO, supra*. On close review, we find two such errors in the judgment.

First is the amount of the down payment. The testimony was all over the board, with McNeal stating it variously between $5,000 and $6,200, Jackson between $4,800 and $5,500, and the City Court initially stating $5,500. The Buyer's Order, introduced in evidence as both Ex. P-1 and Ex. D-11, states $5,500. The parties' unreliable recollections of other amounts simply do not alter this. The City Court was plainly wrong to award any other amount. The judgment will be amended to this effect.

Second is the identity of the seller. The judgment ambiguously refers to "Mr. James Jackson, owner, representing the Defendant herein, Car City LLC, appearing as a Self-Represented Litigant." The documents in evidence, uniformly and consistently, list the seller as Car City LLC, not Jackson. No member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company. La. R.S. 12:1230 (B). While the City Court labeled the transaction a "scheme" and "fraudulent," it did not find "fraud practiced upon" the buyer sufficient to hold the member, manager, employee, or agent personally liable. La. R.S. 12:1230 (D). The decree will be amended to cast only Car City LLC in judgment.

7

## CONCLUSION

For the reasons expressed, we amend the judgment to state as follows:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that there be judgment herein in favor of the plaintiff, ROMONICA D. McNEAL, and against the defendant, CAR CITY LLC, in the amount of Six Thousand, One hundred Nineteen dollars and 00/100 ($6,119.00), together with judicial interest thereon from June 10, 2024, until paid.

Appellate costs are to be paid one-half by Car City LLC and one-half by Romonica McNeal.

**JUDGMENT AMENDED**.