JOY COSSICH LOBRANO, Judge.
| T Beau Gast (“Gast”), an employee of the New Orleans Police Department (“NOPD”) classified as a Police Officer I, appeals the decision of the New Orleans Civil Service Commission (“CSC”), denying his appeal of the discipline imposed by Superintendent Roñal Serpas (“Supt. Ser-pas”), the appointing authority. Supt. Ser-pas dismissed Gast from the NOPD and suspended him for twenty (20) days after determining that Gast had filed a false police report resulting in the false arrest and false imprisonment of two women. For the reasons that follow, we affirm the CSC’s decision.
Following their' arrest in the French Quarter for prostitution loitering, Quanetia Davis (“Davis”) and Kyana Boykins (“Boy-kins”) filed a complaint with the NOPD Public Integrity Bureau (“PIB”) on November 23, 2009, alleging criminal misconduct by the arresting officers, Gast and Officer Thomas McMasters (“McMas-ters”)[1]. The PIB initiated the formal DI-1 investigation into the allegation |2that same day and assigned Sergeant Jenerio Sanders (“Sgt. Sanders”) to investigate the matter.
On July 4, 2010, Sgt. Sanders sent Gast written notice pursuant to La. R.S. 40:2531(B)(7), outlining the sustained charges of misconduct and notifying him *733 that the internal disciplinary investigation was complete. Gast had the opportunity to present facts in mitigation and to explain his conduct at a disciplinary hearing held on March 16 and March 23, 2011.
On March 25, 2011, Gast received a disciplinary letter stating that the appointing authority had determined that he violated NOPD internal rules relative to (a) moral conduct by committing false imprisonment; (b) performance of duty for failing to properly verify Davis’s record in an arrest for prostitution loitering; and (c) official information for documenting false or inaccurate information on the affidavit for the arrest of Davis. Specifically, the appointing authority determined Gast failed to check Davis’s name in the NOPD computer system to determine whether she had a previous arrest and conviction for prostitution within the last twelve months, which is an element of the crime for prostitution loitering. The appointing authority also determined Gast falsely stated in the affidavit of arrest that undercover police officer Marshall Scallan (“Scallan”) had observed Davis approach and stop several males in the 200 block of Bourbon Street and that Davis also approached Scallan but turned and walked away upon seeing him (Gast) approach. For violation of the rule regarding moral conduct, Supt. Serpas terminated Gast. For violation of the rules regarding performance of duty and | ^official information, Gast received a total suspension of 20 days — 10 days for the violation of each rule.
Gast appealed his termination and suspension to the CSC. Following a hearing, the CSC Hearing Examiner recommended the appeal be denied. On December 20, 2012, the CSC denied Gast’s appeal, finding the appointing authority established by a preponderance of the evidence that it had disciplined Gast for cause and that it had not abused its discretion by terminating him considering Gast had filed a false arrest affidavit to justify the false arrest and imprisonment of Davis.
Gast appealed, raising two assignments of error.
The CSC has authority to “hear . and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const, art. X, § 12; Pope v. New Orleans Police Dep’t, 2004-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. The CSC is not charged with such discipline. “[T]he authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty.” Pope, 2004-1888, pp. 5-6, 903 So.2d at 4.
“The appointing authority has the burden of proving, by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.” Cure v. Dep’t of Police, 2007-0166, p. 2 (La.App. 4 Cir. |4 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dep’t of Police, 2006-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. “The protection of civil service employees is only against firing (or other discipline) without cause.” Cornelius v. Dep’t of Police, 2007-1257, 2007-1258, p. 7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dep’t, 2000-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
The decision of the CSC “is subject to-review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly *734 wrong standard of review.” Cure, 2007-0166, p. 2, 964 So.2d at 1094, citing La. Const, art. X, § 12(B). In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the CSC order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Cure, 2007-0166, p. 2, 964 So.2d at 1094-95. A decision of the CSC is “arbitrary and capricious” if there is no rational basis for the action taken by the CSC. Id., p. 2, 964 So.2d at 1095.
In determining whether an appointing authority properly imposed disciplinary action against a classified employee, the reviewing court must consider whether the punishment is commensurate with the offense. Staehle v. Dep’t of Police, 98-0216, p. 5 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1034. The evidence in the record must establish a rational basis for the imposed discipline. Id., p. 6, 723 So.2d at 1034.
LFirst, we address the issue of whether the appointing authority had legal cause to discipline Gast for violating departmental rules regarding moral conduct, neglect of duty, and falsifying official information.
Both Davis and Boykins testified at the CSC hearing that they were walking down Bourbon Street in the early morning hours of November 8, 2009, when Gast and McMasters arrested them without justification. Davis testified that Gast informed her that she was under arrest because an undercover police officer told him that she and Boykins were soliciting. The two women were handcuffed and left sitting on the curb until they were taken to Central Lockup, where they spent the weekend until they were released the following Monday. Davis and Boykins had no prior arrests or convictions for prostitution.
Scallan testified that he did work the Bourbon Street promenade at the time the incident occurred, but did not recall the arrest that resulted in Gast’s termination. Nonetheless, Scallan testified that he did not work undercover except on one occasion that did not involve a prostitution arrest. He also testified that he reviewed an incident report that he signed on the same night, along with his partner Officer Jacob Lathrop (“Lathrop”), involving a report of a lost or stolen wallet. Scallan explained that if he was working with La-throp he would have been in uniform and not working undercover. Thus, Scallan concluded that he could not have reported to Gast that he observed Davis and Boy-kins engage in criminal activity while working undercover, as Gast claimed.
|fiGast testified that he did not observe Davis and Boykins soliciting for prostitution but insisted that Scallan was in plain clothes working undercover the night he and McMasters arrested the women and that he relied upon what Scallan told him. Gast testified that his statement in Davis’s affidavit of arrest was true and accurate; otherwise he would not have arrested the subjects. Gast admitted that he failed to check the NOPD computer system to ascertain whether Davis or Boykins had any prior arrests or convictions prior to arresting them. He testified that he was unaware that a prior prostitution conviction was a prerequisite for the crime of prostitution loitering.
Supt. Serpas testified that Gast impaired the efficient operation of the police department because he failed to “enforce the law consistent with law” and his conduct denied two citizens of their freedom. Supt. Serpas further testified that he considered the disciplinary guidelines in imposing the suspension and dismissing Gast from the NOPD.
*735 The Rules of the Civil Service Commission for the City of New Orleans provides that when a classified employee has committed an act to the prejudice of the service or otherwise has been subjected to corrective action, the appointing authority shall take action as warranted by the circumstances to maintain the standards of effective service. See Rule IX, § 1.1. This action may include removal from the service, see Rule IX, § 1.1(a), and suspension without pay not exceeding one hundred twenty (120) calendar days, see Rule IX, § 1.1(e).
|7In upholding the discipline imposed by the appointing authority, the CSC found no evidence that Davis and Boykins engaged in any activity that would have caused Gast to arrest them for prostitution. Although Gast insisted that he relied upon Scallan’s observations to make the arrest, the CSC found Scallan’s testimony that he was in no position on the night in question to observe and report the crime for which the women were arrested to be credible. Based on our review of record, we agree with the CSC’s conclusion that the appointing authority established by a preponderance of the evidence that Gast filed a false arrest affidavit to justify a false arrest and imprisonment and that the appointing authority had just cause to dismiss Gast from the NOPD. Thus, we do not find the CSC was arbitrary and capricious or abused its discretion by denying Gast’s appeal and upholding his termination and suspension.
Gast also argues on appeal that the appointing authority’s investigation did not comply with the sixty-day time limit set forth in La. R.S. 40:2531(B)(7) and, thus, the imposed discipline is an absolute nullity under La. R.S. 40:2531(C). For purposes of La. R.S. 40:2531(B)(7), Gast contends the complaint was initiated on November 23, 2009, when the PIB initiated the formal DI-1 investigation into the allegations made by Davis and Boykins. He claims that the investigation ended on July 7, 2010, when he received the written notice from the NOPD outlining the sustained charges of misconduct and informing him that the internal disciplinary investigation was complete. Because more than sixty days elapsed between the initial complaint and the completion of the investigation, Gast argues the NOPD | ¿failed to comply with sixty-day limitation under the statute, rendering the imposed discipline an absolute nullity.
McMasters raised the same issue in appealing his termination. See n.l infra. This Court reversed the CSC’s decision denying McMasters’s appeal and reinstated him to his former position, finding that the investigation was not completed within sixty days and, thus, the imposed discipline was an absolute nullity.[2] On a writ application from the NOPD, the Louisiana Supreme Court reversed in McMasters v. Dep’t of Police, 2013-2634 (La.2/28/14), 134 So.3d 1163, finding no violation of the sixty-day time limit set forth in La. R.S. 40:2531(B)(7), because “[t]he investigation into McMasters’s conduct was clearly an investigation of alleged criminal activity.” Id. at 1, 134 So.3d at 1164 — . In so holding the Court cited its prior decision in O’Hern v. New Orleans Police Dep’t, 2013-1416 (La.11/8/13), 131 So.3d 29. Thus, the same argument raised by Gast is without merit.
Accordingly, for the reasons set forth herein, we affirm the decision of the CSC to deny Gast’s appeal.
AFFIRMED.

. McMasters was also suspended and dismissed from the NOPD as a result of his conduct arising from the arrests of Davis and Boykins. The Louisiana Supreme Court re-cendy upheld McMasters’s suspension and dismissal in McMasters v. Dep't of Police, 2013-2634 (La.2/28/14), 134 So.3d 1163.

. McMasters v. Dep’t of Police, 2013-0348 (La.App. 4 Cir. 10/9/13), 126 So.3d 684.