Judge Joy Cossich Lobrano
In this civil service case, plaintiff/appellant, Valencia Lewis ("Lewis"), appeals the decision of the Civil Service Commission ("CSC"), upholding the suspension and termination of Lewis' employment. Lewis held the position of Office Assistant I for the Youth Study Center ("YSC"), a secure, pre-trial detention facility for youths accused of delinquent offenses in Orleans Parish, under the direction of the defendant/appellee, Department of Human Services ("DHS" or the "appointing authority"). DHS placed Lewis on emergency suspension, and subsequently terminated Lewis' employment, for violating internal employee rules of conduct prohibiting threatening other employees, after Lewis made comments regarding her desire to "hit" her supervisor, Assistant Superintendent Stephanie Mills ("Mills"). For the reasons that follow, we affirm the decision of the CSC.
The facts leading up to Lewis' discipline are as follows. On the morning of September 1, 2015, Lewis met with Assistant Superintendent Leroy Crawford ("Crawford"), to inform him she was feeling ill and wanted to leave work to seek medical care. Lewis also expressed to Crawford *678 various frustrations with her work assignments and Lewis' feelings that Mills treated her with disrespect. Lewis stated that she would "get so mad" with Mills that she "want[ed] to hit her in the face." Crawford brought Lewis to the office of Superintendent Glenn Holt ("Holt"), where Crawford informed Holt of Lewis' statements.
On the same date, September 1, 2015, Holt sent Lewis a disciplinary letter on behalf of DHS, notifying Lewis that she had been placed on emergency suspension effective September 2, 2015. The letter stated that the appointing authority had determined that Lewis' comments directed toward Mills were in violation of YSC internal rules relative to (a) treating coworkers professionally and with respect; and (b) prohibiting violent acts or threatening other employees. Following a pre-termination hearing on September 21, 2015, Lewis was terminated on September 24, 2015 for violation of the rule prohibiting threatening other employees.
Lewis appealed her suspension and termination to the CSC. Lewis' CSC appeal proceeded to hearing on March 17, 2016. On January 23, 2017, the hearing examiner issued his report in which he concluded that the appointing authority met its burden of proof and established by a preponderance of the evidence that Lewis was disciplined for cause, that Lewis' conduct impaired the public service, and that the discipline imposed was commensurate with the offense. On March 27, 2017, the CSC denied Lewis' appeal, upholding her suspension and termination. This appeal followed.
The CSC "has authority to 'hear and decide' disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty." Pope v. New Orleans Police Dep't , 2004-1888, p. 5 (La. App. 4 Cir. 4/20/05), 903 So.2d 1, 4 (quoting La. Const. art. X, § 12 ). "The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause." Gast v. Dep't of Police , 2013-0781, p. 3 (La. App. 4 Cir. 3/13/14), 137 So.3d 731, 733. "The CSC is not charged with such discipline." Id. "[T]he authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty." Pope , 2004-1888 at p. 5, 903 So.2d at 4.
"The appointing authority has the burden of proving, by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority." Cure v. Dep't of Police , 2007-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094 (citing Marziale v. Dep't of Police , 2006-0459, p. 10 (La. App. 4 Cir. 11/8/06), 944 So.2d 760, 767 ). "The protection of civil service employees is only against firing (or other discipline) without cause." Cornelius v. Dep't of Police , 2007-1257, 2007-1258, p. 7 (La. App. 4 Cir. 3/19/08), 981 So.2d 720, 724 (quoting Fihlman v. New Orleans Police Dep't , 2000-2360, p. 5 (La. App. 4 Cir. 10/31/01), 797 So.2d 783, 787 ).
"In determining whether an appointing authority properly imposed disciplinary action against a classified employee, the reviewing court must consider whether the punishment is commensurate with the offense." Gast , 2013-0781 at p. 4, 137 So.3d at 734 (citing Staehle v. Dep't of Police , 98-0216, p. 5 (La. App. 4 Cir. 11/18/98), 723 So.2d 1031, 1034 ). "The evidence in the record must establish a rational basis for the imposed discipline." Id. (citations omitted).
This Court applies the following standard of review to Civil Service Commission cases:
*679 First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review.
Russell v. Mosquito Control Bd. , 2006-0346, pp. 7-8 (La. App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40 (internal citations omitted).
Lewis brings this appeal pro se and filed a brief with an attached "supplemental and amended petition with a memorandum to support" with exhibits. In her brief, Lewis argues: (1) that the district court erred in upholding her suspension and termination, finding she posed a threat to another employee, rather than transferring Lewis to another position; and (2) that she has suffered damages due to defamation of her character. In her supplemental petition, Lewis contends: (1) that exhibits she introduced in the CSC appeal were not made a part of the record; and (2) that she has suffered financial and mental strain.
"Where pro se litigants are concerned, in the interest of justice, Louisiana appellate courts will read pro se filings indulgently and attempt to construe a brief as though assignments of error were properly made." Richard v. Hawthrone , 2015-559, p. 8 (La. App. 5 Cir. 5/12/16), 192 So.3d 273, 278 (citing Greenwood Cmty. Ctr. v. Calep , 48,737, pp. 6-7 (La. App. 2 Cir. 1/15/14), 132 So.3d 470, 474 ). See also Manichia v. Mahoney , 2010-0087, p. 3 (La. App. 4 Cir. 8/4/10), 45 So.3d 618, 620. "However, even with the leeway or patience extended to a pro se litigant in the form of liberally construed pleadings, the pro se claimant is required to meet her burden of proof." Greenwood , 48,737 at p. 7, 132 So.3d at 474 (citing Manichia , 2010-0087 at p. 8, 45 So.3d at 622 ). We therefore construe Lewis' supplemental petition and the arguments raised therein as part of her brief.
Nevertheless, an appellate court is restricted in its review to the record evidence, and attachments to briefs that are not a part of the record cannot be considered on appeal. Succession of Jones, 2014-0642, p. 11 (La. App. 4 Cir. 11/12/14), 154 So.3d 624, 630. "Jurisprudence provides a 'longstanding general rule that issues not submitted to the trial court for decision will not be considered for the first time on appeal.' " Hurst v. Dep't of Police, 2014-0119, p. 6 (La. App. 4 Cir. 7/23/14), 146 So.3d 857, 860 (quoting Jones v. Capitol Enterprises, Inc., 2011-0956, pp. 18-19 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 487 ). "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." Uniform Rules of Louisiana Courts of Appeal, Rule 1-3.
In its appellee brief, DHS objects to Lewis' attempt to raise new claims and supplement the record with additional evidence. DHS correctly points out that Lewis' claims of defamation and financial and mental strain are not properly before this Court, as the record reveals that Lewis did *680 not raise either of the issues in the court below. Lewis has made no showing that the interest of justice requires that her defamation and mental and financial strain claims be considered for the first time on appeal. Therefore, these claims are not properly before us and will not be considered.
We next address Lewis' claim that twenty-one exhibits, which she introduced into evidence before the CSC, were not included in the record on appeal. Lewis attached a copy of these materials to her brief and supplemental petition. Our review of the record reveals that Lewis is mistaken. The materials attached to Lewis' appellate filings are indeed a part of the record on appeal, and this evidence was before the CSC. Therefore, this argument is without merit.
We now consider the primary argument set forth in Lewis' brief: that the CSC "failed to find/state that [Lewis] was already eligible to be transferred back to her former place of employment and instead chose to suspend me while not being present at work, 2 days later alleging that I posed a threat to an employee." As discussed herein, DHS had the burden of proving by a preponderance of the evidence that the complained-of infraction occurred, and that the infraction "bore a real and substantial relationship to the efficient operation of the appointing authority." Cure , 2007-0166 at p. 2, 964 So.2d at 1094. The reviewing court must consider whether the penalty is commensurate with the offense, and the evidence of record must establish a rational basis for the discipline. Gast , 2013-0781 at p. 4, 137 So.3d at 734 (citations omitted). Essentially, Lewis disputes two of the CSC's findings: (1) that the infraction occurred and (2) that the discipline was commensurate with the offense.
Turning to the issue of whether the complained-of infraction occurred, the record supports the CSC's finding that Lewis violated DHS workplace rules when she made statements expressing a desire to hit Mills. In its disciplinary letters to Lewis, notifying her in writing of her suspension and termination, DHS cited to the following workplace rules:
Principles of Conduct
Treat coworkers professionally and with respect.
Employee Rules of Conduct
1. No employee shall act or behave privately or officially in a manner that undermines the efficiency of YSC, causes the public to lose confidence in Youth Study Center (YSC), or brings discredit upon them, or the City of New Orleans.
2. No employee shall undermine the Superintendent's or an Assistant Superintendent's ability to conduct a safe and secure facility or disrupt the general good order of the Youth Study Center whether by verbal comments or physical acts whether on or off duty, on City property or off City property.
3. Employees shall comply with all YSC and the City of New Orleans work place rules, memorandums, and written directives or verbal directives.
14. Employees will not use threats or intimidation toward youth or any other person on YSC property or off grounds whether on or off duty.
25. Employees shall not engage in any improper actions which violate department policies and procedures or that endanger other employees.
64. Staff shall maintain a work environment that is free from discrimination and harassment.
65. Staff shall never be engaged in a violent act, fighting, horseplay, nor *681 threaten or interfere with other employees at any time on YSC premises or at any other place while on duty. *An Employee who engaged in a violent act, fighting, horseplay, or threaten[ed] a staff member shall be terminated*
(Emphasis in original).
In upholding the discipline against Lewis, the CSC relied upon the testimony of Crawford, who recounted that Lewis' stated to him on September 1, 2015, regarding Mills, "I get so upset with her. I mean I feel like I want to hit her in the face." The CSC also cited the testimony of Holt, who testified that Lewis repeated to him her earlier statement regarding her desire to strike Mills, and recounted a subsequent telephone conversation in which Lewis attempted to clarify to Holt that she did not "want to hit Mills in the face" but that she "felt like she needed to hit" Mills. Holt testified that YSC has a zero tolerance policy for workplace violence and that threats of violence against another employee raise serious concerns regarding safety and the overall functioning of the facility. Further, Lewis, in her own testimony to the CSC, admitted that "I said that it made me feel like I wanted to hit her, because ... it made me feel like I was violated." Lewis went on to testify that in making this statement, she had not intended to make a threat to Mills; she was stating the way that Mills' perceived disrespect made her feel.
"[A]s in other civil matters, deference must be given to the [CSC's] factual findings, which should not be disturbed on appeal unless manifestly erroneous or clearly wrong." Davis v. Recreation Dep't , 2012-1273, p. 9 (La. App. 4 Cir. 1/30/13), 107 So.3d 1254, 1259. "Unless clearly contrary to the evidence, credibility determinations are within the discretion of the trier of fact and will not be disturbed by the reviewing court." Id. , 2012-1273 at p. 11, 107 So.3d at 1260 (citations omitted).
Here, the evidence is not clearly contrary to the CSC's finding that Lewis made threatening remarks directed at Mills, in violation of DHS employee rules, in particular Rule 65, prohibiting "threaten[ing] ... other employees at any time on YSC premises or at any other place while on duty..." There was no dispute that Lewis made statements expressing her feelings that she wanted to hit Mills. Lewis asserted, however, that her remarks were not intended as threatening. As the trier of fact, the CSC determined that Crawford's and Holt's testimony was more credible than that of Lewis, and found that Lewis' statements were expressions of workplace violence, which "rightfully contributed to DHS personnel believing that returning [Lewis] to work would create an unsafe environment for Ms. Mills, other staff, and the youths served by the YSC." Accordingly, we cannot say that CSC's factual finding that the complained-of infraction occurred was manifestly erroneous or clearly wrong.
Considering Lewis' argument that the discipline against her was overly harsh, the record supports the finding that suspension and termination were commensurate with the offense. Lewis contends that, prior to the events at issue on appeal, she had requested and had initially been granted a transfer to an administrative position in another department where she previously had worked. She argues that DHS should have permitted the transfer, rather than suspending or terminating her employment.
In determining whether the disciplinary action is commensurate with the infraction, this Court should not modify the discipline imposed by the CSC unless it was "arbitrary, capricious, or characterized by an abuse of discretion."
*682 Cure , 2007-0166 at p. 2, 964 So.2d at 1094-95. A decision by the CSC is "arbitrary or capricious" if there is no rational basis for the action taken by the CSC. Id. , 2007-0166 at p. 2, 964 So.2d at 1095. "In practice, we afford great deference to the CSC's ruling supporting the decision of the appointing authority." Byrd v. Dep't of Police , 2012-1040, p. 10 (La. App. 4 Cir. 2/6/13), 109 So.3d 973, 980 (citing Serignet v. Dep't of Health , 2008-0469, p. 10 (La. App. 4 Cir. 5/20/09), 15 So.3d 1019, 1025 ).
While termination seems harsh, this penalty is specifically provided for under Rule 65 of the DHS' Employee Code of Conduct, which reads, in pertinent part, as follows: "... An Employee who engaged in a violent act, fighting, horseplay, or threaten[ed] a staff member shall be terminated. " (Emphasis in original). In upholding both the suspension and discipline, the CSC found that Lewis was undaunted by admonitions from both Crawford and Holt and expressed on multiple occasions a desire to hit Mills. Moreover, Lewis continued to make such statements when she testified before the CSC that Mill's actions "made [Lewis] feel like [she] wanted to hit [Mills]."
As such, the CSC stated:
The DHS has an obligation to its employees to foster a safe and professional work environment. It must deter any misconduct that compromises its ability to meet this obligation. The degree of [Lewis'] misconduct warranted substantial discipline because it adversely impacted the Superintendent's ability to provide a safe and professional workplace.
In reviewing whether punishment is commensurate with the infraction, this Court has explained:
Neither the CSC nor a reviewing court should "second-guess" an appointing authority's decisions. See Lange v. Orleans Levee District , 10-0140, p. 17 (La. 11/30/10), 56 So.3d 925, 936. The CSC and a reviewing court may intervene only when the appointing authority's decisions are arbitrary and capricious or characterized by an abuse of discretion. Id. Moreover, neither the CSC nor the reviewing court may serve as a de facto pardon board. Id. "[S]ympathy is not a legal standard." Id.
Byrd , 2012-1040, at p. 10, 109 So.3d at 980.
Considering the record before us in light of these principles, we decline to disturb the CSC's conclusion that that an emergency suspension and termination represent an appropriate level of discipline given Lewis' actions. On the facts before this Court, we cannot say that the CSC acted arbitrarily or capriciously in upholding the decision of DHS. Lewis' argument lacks merit.
Accordingly, for these reasons, we affirm the decision of the CSC to deny Lewis' appeal.
AFFIRMED