| | | |
|---|---|---|
| SEAN HERIGODT AND PROJECT NEMO, L3C | * | NO. 2024-CA-0580 |
| | * | |
| VERSUS | * | COURT OF APPEAL |
| | * | |
| LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, DR. SHAWN D. WILSON IN HIS OFFICIAL CAPACITY AS LA DOTD SECRETARY, ANTOINE BANKS, AND TYISHA BANKS | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-00161, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Karen K. Herman)


Sean Herigodt
1416 St. Ferdinand Street
New Orleans, LA 70117

    IN PROPER PERSON/APPELLANT

Elizabeth Baker Murrill, ATTORNEY GENERAL
Louisiana Department of Justice
Litigation Division
1885 North Third Street, 3rd Floor
Baton Rouge, LA 70802

E. Scott Hackenberg, SPECIAL ASSISTANT ATTORNEY GENERAL
HENCHY LAW FIRM, LLC
7737 Old Hammond Highway, Suite B-4
Baton Rouge, Louisiana 70809

    COUNSEL FOR DEFENDANT/APPELLEE

               **REVERSED AND REMANDED**
               **March 7, 2025**

*RML*

*RLB*

*KKH*

This appeal arises from a petition seeking damages allegedly sustained as a result of lack of maintenance of the Robertson Street Oliver Yard Overpass ("Overpass") and blight, which permitted unhoused individuals to establish an encampment under the Overpass. Sean Herigodt ("Mr. Herigodt") and Project NEMO L3C[1] (collectively "Plaintiffs"), asserted that the Louisiana Department of Transportation and Development ("DOTD") failed to take appropriate actions to prevent unhoused people from socializing, living, using/selling drugs, and operating a junkyard under the Overpass.

DOTD filed numerous exceptions contending that prevention and/or eradication of these issues were not the responsibility of DOTD. The trial court maintained DOTD's exception of no cause of action and dismissed Plaintiffs' claims against DOTD.

---

[1] Project NEMO L3C is a "low-profit limited liability company and juridical person . . . incorporated July 16th, 2015 in Orleans Parish. SEAN HERIGODT is founder, manager, and registered agent for Project NEMO." Project NEMO L3C is domiciled at Mr. Herigodt's home.

Upon review, we find Plaintiffs' petition included allegations sufficient for stating a claim for inverse condemnation. The trial court erred by failing to permit Plaintiffs to amend their petition pursuant to La. C.C.P. art. 934. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Mr. Herigodt resides approximately a half block from the Overpass. He contends that the encampment of unhoused people under and in the Overpass has caused numerous problems for himself and the neighborhood. Namely, he alleges that a junkyard business, as well as drug usage and dealing, has led to an increase in crime, including the murders of people known to Mr. Herigodt. Further, he maintains that his eldest daughter relocated to Texas to live with her grandparents because she became too afraid to live near the Overpass.

As a result of these alleged occurrences, Plaintiffs filed a Petition for Injunctive Relief, Damages, Fees, and Costs against Dr. Shawn D. Wilson, as the DOTD secretary; DOTD; Antoine Banks; and Tyisha Banks.[2] Plaintiffs alleged these parties were responsible for creating the perfect environment for the encampment of unhoused people by failing to maintain their respective properties. Plaintiffs filed an Amended Complaint and Petition for Damages wherein they removed Dr. Wilson as a defendant.

DOTD filed an Answer, including numerous exceptions: lis pendens, vagueness, non-conformity, non-joinder of indispensable parties, lack of procedural capacity, no right of action, prescription, and no cause of action. The

---

[2] The Banks purportedly own properties near the Overpass that are blighted. The Banks remain in the suit.

2

trial court conducted a hearing,[3] granted DOTD's exception of no cause of action, and dismissed Plaintiffs' claims against DOTD with prejudice. The trial court also deemed DOTD's remaining exceptions as moot. Plaintiffs' appeal followed.

## *STANDARD OF REVIEW*

"Appellate courts review rulings on exceptions of no cause of action using the *de novo* standard of review because exceptions of no cause of action present legal questions." *Green v. Garcia-Victor*, 2022-0413, p. 5 (La. App. 4 Cir. 9/7/22), 348 So. 3d 799, 802.

## *NO CAUSE OF ACTION*

"This Court has explained that '[a]n exception of no cause of action tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.''" *Green*, 2022-0413, p. 4, 348 So. 3d at 802 (quoting *Henderson v. State Farm Mut. Auto. Ins. Co.*, 2021-0654, pp. 4-5 (La. App. 4 Cir. 12/17/21), 335 So. 3d 349, 353). "[C]ourts can only review the petition, amendments to the petition and any documents attached thereto in deciding an exception of no cause of action." *Green*, 2022-0413, p. 4, 348 So. 3d at 802. "A court cannot consider assertions of fact referred to by the various counsel in their briefs that are not pled in the petition." *2400 Canal, LLC*, 2012-0220, p. 7, 105 So. 3d at 825. "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law; any doubt must be resolved in the plaintiffs' favor." *Id.*

---

[3] The trial court hearing transcript is not contained in the record. Mr. Herigodt attached the transcript to his reply brief. However, "[a]ppellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence." *2400 Canal, LLC v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, 2012-0220, p. 12 (La. App. 4 Cir. 11/7/12), 105 So. 3d 819, 827 (quoting *Denoux v. Vessel Mgmt. Servs., Inc.*, 2007-2143, p. 6 (La. 5/21/08), 983 So. 2d 84, 88).

Plaintiffs raise the following issues on appeal:[4]

1. Whether the trial court erred by incorrectly applying the standard for an exception of no cause of action, thereby dismissing the plaintiff[s'] claims without considering all possible legal theories under which relief could be granted.

2. Whether the trial court erred by misapplying the need for a statutory private right of action, ignoring established Louisiana law that allows negligence claims based on common law duties without explicit statutory authorization.

3. Whether the trial court erred by failing to acknowledge general negligence as the proper legal theory and by not applying the duty-risk analysis to the plaintiff[s'] claims.

4. Whether the trial court erred by failing to recognize that the plaintiff[s] adequately pleaded DOTD's breach of statutory duties, including allegations of actual and constructive notice of hazardous conditions.

5. Whether the trial court erred by failing to address causality due to misapplication of legal standards, neglecting to determine whether the plaintiff[s] had adequately pleaded causation as an essential element of negligence.

6. Whether the trial court erred by improperly limiting recoverable damages to physical injuries and property damage, excluding emotional distress and economic losses recoverable under Louisiana law.

7. Whether the trial court committed procedural errors by dismissing the case with prejudice without allowing the plaintiff[s] an opportunity to amend the petition, particularly given the plaintiff[s'] pro se status, and by prematurely dismissing claims against defendants who had not yet appeared.

---

[4] DOTD alleges in its Appellee brief that Plaintiffs utilized artificial intelligence to draft their Appellant brief due to numerous inaccuracies in quoted and referenced law, as well as incorrect legal citations. DOTD contends Plaintiffs' brief is a result of AI hallucination. Plaintiffs did not deny the accusations, but apologized for the inaccuracies in their Reply brief. Given Mr. Herigodt's pro se filing status, the apologies and attempt at corrections combined with the fact that this Court does not currently have a rule prohibiting the use of artificial intelligence, we decline to penalize Plaintiffs in the instant matter. However, this Court stresses the importance of candor, which applies to licensed attorneys as well as citizens proceeding pro se.

4

In sum, Plaintiffs contend the trial court erred by granting DOTD's exception of no cause of action and by failing to grant leave to amend the petition pursuant to La. C.C.P. art. 934.

***Pleadings***

Plaintiffs alleged[5]:

9.

Plaintiffs allege various negligences by Defendants, resulting in foreseeable and preventable damages. Negligences affecting Plaintiffs include, but are not limited to Defendants':

> -Failure to inspect, maintain, and repair properties they own, control, or bear legal responsibility for, in the manner required by law. Alternatively—if inspections were performed—failure to correct problems described under the premise.

> -Failure to prevent or correct unsafe and hazardous conditions on property they own, control, and/or bear legal responsibility for from affecting the public and Plaintiffs.

> -Failure (in DOTD's case) to design and install critical safety features that could not be easily removed and stolen, especially by scrappers, or to timely replace stolen safety features, up to a decade after their theft.

> -Failure to exclude trespassers, prevent illegal structures, habitations, and occupancies from taking over property they own or control.

> -Failure to prevent or correct blighting conditions affecting these properties.

> -Failure to prevent or correct septic and unsanitary conditions on these properties.

> -Failure to prevent an unlawful junkyard from flourishing on these properties.

> -Contributing to the fostering of a welcoming environment for bold, brazen, and blatantly criminal

---

[5] The quoted portions are taken from Plaintiffs' Petition for Injunctive Relief, Damages, Fees, Costs.

5

activity including murder and attempted murder on these properties.

These negligences will be more specifically pleaded elsewhere, and proven at trial.

14.

. . . Defendant DOTD bears responsibility for inspecting, maintaining, and repairing both "on-system" (state owned) and "off-system" (locally owned) bridges, including the **ROBERTSON STREET (LA 39) OLIVER YARD OVERPASS** elevating the **2700-3000 BLOCKS OF NORTH ROBERTSON STREET** above and across the Norfolk Southern Oliver Yard [Oliver Yard] **BETWEEN PORT STREET** and **FELICIANA STREET** in **NEW ORLEANS** [the Bridge].

23.

Plaintiffs believe DOTD's failure to post adequate "No Trespassing" signage bearing a valid phone number left multiple city agencies and the complaining public clueless and about who owned or was responsible for the land under the bridge, rendering them largely helpless to redress their grievances.

24.

Plaintiffs believe DOTD's failure to maintain its fence under the bridge led directly to a junkyard and encampment flourishing on its land, which formed the cause-in-fact of Plaintiff's [sic] damages.

31.

Plaintiffs believe that DOTD's neglect to inspect, maintain, repair, or replace covers designed to exclude people from the interior of the Bridge's abutments prior to November 30th, 2021, led directly to human occupancy, which occasioned the homeless encampment, which formed the cause-in-fact of Plaintiffs' damages.

43.

Plaintiffs believe that DOTD neglect of the Bridge in the above ways contributed to an atmosphere of blight, abandonment, and lawlessness that encouraged dumping, criminal activity, thefts, and murder, on Plaintiffs' block, which form the cause-in-fact of Plaintiffs' damages.

Further, Plaintiffs filed an Amended Complaint, and Petition for Damages, Fees, and Costs wherein they removed Dr. Wilson as a defendant and reiterated that:

12.

Upon information and belief, DOTD owns, controls, and/or bears various responsibilities for the Bridge and land under the

6

Bridge, and for an unimproved easement along the Bridge's south-facing side running between the Oliver Yard and Port St. [the Easement].

DOTD contends it "is not liable (nor statutorily authorized or funded) to evict homeless encampments or to provide security guards for its bridges or to otherwise protect the public from neighborhood property crimes caused by third parties." Further, the "DOTD does not engage in 'policing' or the enforcement of Criminal or Municipal laws."

However, Plaintiffs alleged, in their Amended Complaint:

24.

On December 1st, 2021, DOTD—finally—performed a stellar job evicting the occupants and remediating the encampment and junkyard from DOTD-controlled land [the December 1st eviction]. DOTD employees repaired the Bridge lighting system: occupants had tapped into the Bridge's lighting system, eventually causing much of the Bridge's lighting to fail. DOTD workers were courteous, professional, efficient. Upon information and belief, DOTD hauled away <u>twenty-one dump-truck-loads of debris</u> from the Bridge's footprint and surrounds.

25.

Upon information and belief, an occupant was arrested after assaulting some of those participating in the December 1st eviction with an axe. He was quickly released, immediately returning to the Bridge to rebuild.

26.

On December 4th, other occupants returned to DOTD-owned land, erecting structures similar to their former shelters. Hoarding under the bridge resumed the same day. On December 18th, occupants suspended a tarp-partition from Bridge girders, partly enclosing a workshop where Occupants could be seen switching parts among half-a-dozen-or-so bicycles. The Junkyard rapidly reappeared. Everything rapidly reappeared.

27.

The December 1st eviction failed to prevent the encampments' immediate return. Plaintiffs noted few measures taken, at the time, to prevent this.

28.

7

Though grateful for DOTD's efforts, Plaintiffs believe the December 1ˢᵗ eviction failed to offer any respite against continuing damages, or the ever-present credible threat of further damages. Later measures were more effective, but, by then. Plaintiff's [sic] injuries had been sustained.

### *Inverse Condemnation*

"Under Article 1, Section 4 of the Louisiana Constitution of 1974, '[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner.'" *Arnold v. Town of Ball*, 94-972, p. 5 (La. App. 3 Cir. 2/1/95), 651 So. 2d 313, 318. The cause of action for inverse condemnation is a "proceeding whereby an owner may seek redress when his property is damaged or taken without the proper exercise of eminent domain.'" *Constance v. State Through Dep't of Transp. & Dev. Off. of Highways*, 626 So. 2d 1151, 1156 (La. 1993) (quoting *State, through the Dep't of Transp. and Dev. v. Chambers Inv. Co., Inc.*, 595 So. 2d 598, 602 (La. 1992); *Reymond v. State, Through the Dep't of Highways*, 255 La. 425, 231 So. 2d 375, 383 (1970)). "[I]nverse condemnation arises out of the self-executing nature of the constitutional command to pay just compensation." *Chambers*, 595 So. 2d at 602. Louisiana Civil Code Articles 667 and 668 "require that he [landowner] tolerate some inconvenience from the lawful use of a neighbor's land." *Constance*, 626 So. 2d at 1155. However, "[w]hile property may be taken or damaged by the state or its political subdivisions for public purposes in the exercise of police power, just compensation is constitutionally required." *Id.*, 626 So. 2d at 1156.

Louisiana Civil Code Article 667 provides:

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he

8

is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

Jurisprudence has found that La. C.C. art. 667 applies even if the State owns the neighboring property.[6] *Constance*, 626 So. 2d at 1155.

The Louisiana Supreme Court noted that the 1996 amendments to La. C.C. art. 667 "changed the theory of liability" and stated:

in order for a proprietor/landowner to be held responsible for damages allegedly caused by works or actions on his property, it must be shown that the proprietor/landowner knew or should have known that the "works" on his property would cause damage, and that the damage could have been prevented by the exercise of reasonable care.

*Yokum v. 615 Bourbon St., L.L.C.*, 2007-1785, pp. 21-22 (La. 2/26/08), 977 So. 2d 859, 874. Work on property "includes not only constructions but also activities that may cause damage." *Id.*, 2007-1785, p. 22, 977 So. 2d at 875. Further, "inverse condemnation is available in all cases where there has been a taking or damaging of property where just compensation has not been paid, without regard to whether the property is corporeal or incorporeal." *Chambers*, 595 So. 2d at 602.

The Louisiana Supreme Court established a three-prong test for determining whether a party is entitled to eminent domain compensation. First, the court must decide if a party's "legal right with respect to a thing or an object has been affected." *Chambers*, 595 So. 2d at 603. Second, the court must find that the

---

[6] This applies to municipalities as well. *See Hamilton v. City of Shreveport*, 180 So. 2d 30 (La. App. 2d Cir. 1965); *Sharon v. Connecticut Fire Ins. Co.*, 270 So. 2d 900 (La. App. 1st Cir. 1972).

property "has been taken or damaged, in a constitutional sense." *Id*. Lastly, the Chambers Court required a finding that the taking was for a public purpose. *Id*. The Court also explained that "where there is no allegation or evidence of personal injury or physical damage to property, a finding of liability under Article 667 'require[s] proof of the presence of some type of excessive or abusive conduct.'" *Constance*, 626 So. 2d at 1157 (quoting *Chambers*, 595 So. 2d at 605).

When reviewing the pleadings of a pro se litigant, we are required to liberally construe the pleadings. *Lewis v. Dep't of Hum. Servs.*, 2017-0608, p. 5 (La. App. 4 Cir. 3/21/18), 242 So. 3d 675, 679. Arguably,[7] Plaintiffs' lengthy allegations outline some of the components of a claim for inverse condemnation. Moreover, any doubts must be resolved in Plaintiffs' favor. *2400 Canal, LLC*, 2012-0220, p. 7, 105 So. 3d at 825. Given these factors, we find the trial court erred by granting DOTD's exception of no cause of action and by failing to permit Plaintiffs an opportunity to amend their petition pursuant to La. C.C.P. art. 934.[8]

### *DECREE*

For the above-mentioned reasons, we find the trial court erred by granting DOTD's exception of no cause of action and by failing to permit Plaintiffs an opportunity to amend their petition pursuant to La. C.C.P. art. 934. The judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

---

[7] We offer no comment on Plaintiffs' ability to prevail on the merits.
[8] La. C.C.P. art. 934 provides, in pertinent part: "When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court."